Natalia **MAKAROVA**, Plaintiff–Appellant,

v.

**UNITED STATES of America,**
Defendant–Appellee.

Docket No. 99–6089

United States Court of Appeals,
Second Circuit.

Argued: Nov. 3, 1999.

Decided: Jan. 12, 2000.

Myron Moskovitz, Law Office of Myron Moskovitz, Berkeley, CA (Gilbert G. Spencer, Jr., Spencer & Maston, New

York, NY, of counsel), for Plaintiff–Appellant.

David S. Jones, Assistant United States Attorney for the Southern District of New York (Mary Jo White, United States Attorney for the Southern District of New York, Gideon A. Schor, Assistant United States Attorney, of counsel), for Defendant–Appellee.

Before: McLAUGHLIN, JACOBS, and SACK, Circuit Judges.

McLAUGHLIN, Circuit Judge:

## BACKGROUND

In 1982, Natalia Makarova was injured when a piece of scenery fell on her shoulder at the Kennedy Center for the Performing Arts in Washington, D.C. At the time of the injury, Makarova was performing in a production of the musical "On Your Toes," and a witness for Makarova asserts that she was widely regarded as the world's best prima ballerina.

The Kennedy Center was the producer of "On Your Toes." As producer, it: (1) contracted with the estates of the musical's authors for the right to "produce and present" the show; (2) contracted directly with the director and stage manager; (3) arranged a letter of credit for bond coverage for the show; (4) paid performers throughout the Washington, D.C. run of the show; and (5) maintained workers' compensation coverage for the show's performers and workers.

The contract for Makarova's services was between the Kennedy Center, as producer, and "NMK Productions, Inc. f/s/o Natalia Makarova." NMK Productions, Inc. was Makarova's "personal services corporation," and the term "f/s/o" means "for the services of."

Makarova personally signed a rider to the contract, certifying "that she [had] read and approved all the terms and conditions of said contract, and agree[d] to perform her services, as performing actress in 'On Your Toes', in accordance with said

contract and the [R]ules of the Actors' Equity Association ... *as though the undersigned had entered into this contract*" (emphasis added). The rider further provided that Makarova would "perform services hereunder in accordance with the terms and conditions of Actors' Equity Association's Standard Run–of–the–Play Contract," which incorporated by reference a standardized set of protocols called the "Agreement and Rules Governing Employment" ("Agreement and Rules").

The incorporated Agreement and Rules provided that the "[p]roducer agrees to obtain and maintain Workmen's Compensation Insurance Coverage for all Actors ... in his employ." The Agreement and Rules also included a choice of law provision for employment contracts stating that "*[a]ll contracts of employment* shall be subject to, be construed by, and all the rights of the parties thereto shall be determined by the laws of the State of New York" (emphasis added).

Her contract required Makarova to: (1) play a specific part in the musical; (2) maintain a contractually specified rehearsal and performance schedule; (3) have her hair styled in accord with the time period of the show; (4) wear shoes and make-up provided by the Kennedy Center; and (5) provide her exclusive services to the Kennedy Center during the term of the contract.

The Kennedy Center ("United States") is part of the Smithsonian Institution, which is owned and operated by the federal government. In 1984, Makarova filed a federal administrative claim against the Kennedy Center for her injuries. In 1997, thirteen years later, Makarova filed a civil suit against the United States pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346 (1994) ("FTCA"), in the United States District Court for the Southern District of New York (Preska, *J.*). Makarova claimed that the United States government was responsible for the injuries that she sustained during her fateful performance.

The United States moved under Rule 12(b)(1) of the Federal Rules of Civil Procedure to dismiss Makarova's complaint for lack of subject matter jurisdiction. It asserted that Makarova was an employee of the Kennedy Center at the time of her accident, and, thus, her exclusive remedy against her employer was for workers' compensation benefits.

The district court dismissed Makarova's complaint, finding that: (1) she was indeed an employee of the Kennedy Center under governing New York law; and (2) as an employee, her complaint against the United States was barred because the District of Columbia Workers' Compensation Act was her sole remedy.

Makarova now appeals. She argues that she was not an employee of the Kennedy Center under either New York or District of Columbia law.

For the reasons set forth below, we affirm.

## DISCUSSION

### I. *Rule 12(b)(1)*

Construing all ambiguities and drawing all inferences in Makarova's favor, the district court entered judgment under Rule 12(b)(1) of the Federal Rules of Civil Procedure, dismissing her action for lack of subject matter jurisdiction. On appeal from such a judgment, "we review factual findings for clear error and legal conclusions *de novo.*" *Close v. New York*, 125 F.3d 31, 35 (2d Cir.1997).

A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. *See* Fed.R.Civ.P. 12(b)(1). In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court, as it did here, may refer to evidence outside the pleadings. *See Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir.1986). A plaintiff asserting subject matter jurisdic-

tion has the burden of proving by a preponderance of the evidence that it exists. *See Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir.1996). Makarova has failed to meet that burden here.

### II. *The Federal Tort Claims Act*

It is undisputed that the Kennedy Center is an entity of the United States government. However, "[t]he United States, as sovereign, is immune from suit save as it consents to be sued . . ., and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980) (quoting *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941)) (internal quotation marks omitted). The doctrine of sovereign immunity is jurisdictional in nature, *see FDIC v. Meyer*, 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994), and therefore to prevail, the plaintiff bears the burden of establishing that her claims fall within an applicable waiver. *See Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 324 (6th Cir.1990); *Baker v. United States*, 817 F.2d 560, 562 (9th Cir.1987).

The FTCA waives the government's sovereign immunity only for:

> claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b). Both parties concede that the FTCA governs Makarova's complaint, and that, accordingly, subject matter jurisdiction exists only if a private defendant could have been sued by Makarova

in Washington, D.C.—"the place where the act or omission occurred." *Id.*

Under the FTCA, courts are bound to apply the law of the state (or here, the district) where the accident occurred. *See Richards v. United States,* 369 U.S. 1, 10–15, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962). Under District of Columbia law, the exclusive remedy for an "employee" seeking damages from her employer for a work-related injury is the District Workers' Compensation Act. *See* D.C.Code Ann. §§ 36–303(a)(1), 36–304 (1981); *see also Rivers & Bryan, Inc. v. HBE Corp.,* 628 A.2d 631, 633 n. 4 (D.C.1993); *Dominion Caisson Corp. v. Clark,* 614 A.2d 529, 532–33 (D.C.1992). If Makarova was an "employee" of the Kennedy Center, then her remedy lay with the District of Columbia Workers' Compensation Act and not the FTCA.

### III. *Makarova was an Employee of the Kennedy Center*

Pointing to the choice of law provision in the contract, the United States argues, and the district court found, that the question of whether Makarova was an "employee" is governed by New York law.

For her part, Makarova contends that the contract's · choice of law provision should not be triggered until we first determine under District of Columbia law whether she was a party to an "employment contract." She also maintains, that in any event, she was not an "employee" of the Kennedy Center under either New York or District of Columbia law.

These competing contentions conjure up the mystical doctrines of *dépeçage* and *renvoi,* and we decline to enter that bog for the very practical reason that Makarova was an "employee" under the law of both New York and the District of Columbia.

#### A. *New York Law*

Under New York law, "there is no absolute rule for determining whether one is an independent contractor or an employee." *Mace v. Morrison & Fleming,* 267 A.D. 29, 44 N.Y.S.2d 672, 674 (3d Dep't 1943). However, the typical test of whether one is an independent contractor lies in the control exercised by the employer, and in who has the right to direct what will be done and when and how it will be done. *See id. See generally* 2A N.Y. Jur.2d *Agency and Independent Contractors* § 379 (1998).

Applying these principles, Makarova was an "employee" rather than an independent contractor. She was: (1) required to play a specific part in a specific musical; (2) required to meet a contractually specified rehearsal and performance schedule; (3) contractually obligated to have her hair styled in accord with the time period of the show; (4) required to wear shoes and make-up provided by the Kennedy Center; and (5) obligated to provide her exclusive services to the Kennedy Center during the term of her contract. Although Makarova had a significant say over her own dancing and acting, the director and the Kennedy Center maintained artistic control over the show, including Makarova's performance.

Indeed, New York courts have repeatedly found performance artists to be "employees." A performer who has entered into a written contract with a producer for a stipulated sum and a time certain, with the time and place of work to be determined by the producer, has been held to be the producer's "employee." *See Jack Hammer Assocs. v. Delmy Prods.,* 118 A.D.2d 441, 499 N.Y.S.2d 418, 419–20 (1st Dep't 1986) (holding that an actor was an employee); *see also Berman v. Barone,* 275 A.D. 867, 88 N.Y.S.2d 327, 328 (3d Dep't 1949) (holding that a ballet dancer was an employee). As long as the employer exercises control over such aspects of the workers' employment as the dates and times of performances and the work to be performed, New York law would appear to treat him or her as an employee. *See Challis v. National Producing Co.,* 275 A.D. 877, 88 N.Y.S.2d 731, 732 (3d Dep't

1949) (affirming New York Workman's Compensation Board's holding that a clown was an employee on grounds that "he was under some degree of supervision and control"). The Kennedy Center exercised sufficient control over Makarova to render her an employee as a matter of New York law.

## B. *District of Columbia Law*

Under District of Columbia law, an "employee" is "every person . . . in the service of another under any contract of hire or apprenticeship, written or implied, in the District of Columbia." D.C.Code Ann. § 36–301(9)(1981).

Makarova satisfied this definition. She is a person, who was "in the service of another," performing for the Kennedy Center in the District of Columbia. Makarova was also "under a contract of hire," having agreed to play a specific role in "On Your Toes" for a specific amount of time.

The Kennedy Center also qualified as Makarova's "employer" under the District of Columbia Workers' Compensation Act, because it was an "individual, firm, association, or corporation . . . using the service of another for pay." D.C.Code Ann. § 36–301(10) (1981). The Kennedy Center was the producer of "On Your Toes," and paid Makarova to perform in it.

We agree with the district court that *Spackman v. D.C. Dep't of Employment,* 590 A.2d 515 (D.C.Ct.App.1991), is inapposite. There, the District of Columbia Court of Appeals affirmed a decision of the District of Columbia Department of Employment Services that the plaintiff, a singer in a production of a Mozart opera produced for, but not by, the Washington Opera was an independent contractor. The Washington Opera's relationship with Spackman was crucially different from that between the Kennedy Center and Makarova. Its stage manager and director, themselves independent contractors, not the Washington Opera, controlled and directed the singer's performance. *Id.* at 517. Spackman was therefore not "in the

service" of the Opera. As we have noted, the Kennedy Center consistently maintained full artistic control over "On Your Toes" and Makarova. She was thus "in the service," and therefore an employee, of the Kennedy Center.

## C. *Other Considerations*

Moreover, there are equitable considerations compelling the conclusion that Makarova was an "employee" of the Kennedy Center—she had earlier accepted the benefits of being one. On that occasion, Makarova hurt her chin during a rehearsal. Part of the medical treatment that she received for that injury was paid for by the Kennedy Center's workers' compensation insurer, which covered the Kennedy Center's "Players, Entertainers or Musicians" and "all other employees." Having accepted the workers' compensation benefits of being a Kennedy Center employee, Makarova cannot now argue that she should be free of the strictures of that same workers' compensation regime.

Makarova maintains that she was paid by the Kennedy Center as an independent contractor. The evidence of this, however, is equivocal. It is unclear whether Makarova was paid as an independent contractor, an employee, or both, because the Kennedy Center's payroll records prior to 1983 are not in the record. In 1983, after she had rejoined the cast of "On Your Toes" while it was touring, Makarova was listed haphazardly as both an "independent contractor" and a "regular employee" by the Kennedy Center. Makarova did receive an IRS form 1099 in 1982, listing $1275.00 in "nonemployee compensation." However, that amount represented less than her salary from the Kennedy Center for a single *two-week* pay period. Such a modest sum of "nonemployee compensation" does not establish whether Makarova was classified by the Kennedy Center as an employee or an independent contractor for its payroll purposes. In any event, the occasional char-

acterization of Makarova as an independent contractor in the Kennedy Center's records would be insufficient to classify her under either New York or District of Columbia law as an independent contractor rather than an employee.

Makarova tenders other considerations which she believes make her an independent contractor, including the argument that she was a "star," which somehow apparently makes her something less of an employee. None of these arguments are persuasive. We conclude that Makarova was an employee of the Kennedy Center and, as such, was covered by its workers' compensation insurance. She could not have brought suit against a private employer in Washington, D.C., and therefore, under the FTCA, she could not have done so against the government.

For the foregoing reasons, the district court did not err when it granted the government's motion to dismiss Makarova's complaint.

### CONCLUSION

We have considered the appellant's remaining contentions and find them to be without merit. Accordingly, we *AFFIRM* the grant of appellee's motion for dismissal for lack of subject matter jurisdiction.