Ariel **FRIEDLANDER,** Plaintiff,

v.

**PORT JEWISH CENTER,** Defendant.

No. 07–CV–5253(ADS)ETB.

United States District Court,
E.D. New York.

Dec. 8, 2008.

Liddle & Robinson, L.L.P., by James A. Batson, Esq., of Counsel, New York, NY, for Plaintiff.

Morgan, Lewis & Bockius LLP, by Christopher A. Parlo, Esq., Margaret C. Finster, Esq., Mark S. Dichter, Esq., of Counsel, New York, NY, for Defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

On December 17, 2007, Rabbi Ariel Friedlander ("the Plaintiff") commenced this lawsuit against her former employer, the Port Jewish Center ("the Defendant" or "the Temple"), alleging that, in terminating her, the Defendant violated the terms of her contract and the covenant of good faith and fair dealing. The Defendant has moved to dismiss the Plaintiff's complaint under FED.R.CIV.P. 12(b)(1) on the ground that the First Amendment precludes the Court from exercising subject matter jurisdiction over the Plaintiff's claims. For the reasons that follow, the Defendant's motion to dismiss is granted.

## I. BACKGROUND

The following facts are drawn from the Plaintiff's complaint and the documents that were incorporated by specific reference therein. The Plaintiff entered into a contract with the Defendant in May of 2005 to serve as the Temple's rabbi for a period of three years. The contract provided that the Plaintiff would perform "all the customary and usual duties of rabbis of Reform Congregations of the Union of Reform Judaism." In particular, the contract specified that the Plaintiff was expected to carry out various spiritual and administrative duties that included holiday and worship services; life cycle events; educational functions; pastoral functions; temple and other community functions; membership functions; and administrative functions.

The contract also provided that "the Rabbi shall have freedom of the pulpit," and indicated that the Temple could terminate the Plaintiff's contract only "for gross misconduct or willful neglect of duty." The Plaintiff alleges that some of the Temple's congregants raised objections to changes the Plaintiff made to Bar Mitzvah and Bat Mitzvah services. On or about March 6, 2006, a group of congregants attended a meeting of the Temple's Board of Trustees to air their complaints about the Plaintiff. According to the Plaintiff, one of those congregants, John Helfat, told the Board that if they did not fire the Plaintiff, he and others would leave the congregation.

On or about July 5, 2006, Sandy Ehrlich, the Temple President, sent the Plaintiff an email cataloguing a list of grievances. This extensive list of grievances included, among other issues, the congregants' dissatisfaction with: (i) the Plaintiff's infrequent readings of the Torah; (ii) the quantity and variety of liturgical music selected for religious services; (iii) changes made to the Bar Mitzvah and Bat Mitzvah services; (iv) the Plaintiff's funeral service policies; (v) the Plaintiff's inability to work with religious instructors and the Cantor; (vi) the Plaintiff's neglect of her pastoral functions; (vii) the Temple's attrition rates under her leadership; and (viii) the number of hours the Plaintiff dedicated to administrative functions. Ehrlich's email indicated that she was sending the Plaintiff the list in order to give the Plaintiff an opportunity to prepare a presentation for a meeting with the Board of Trustees on the following day.

However, the Plaintiff did not attend the July 6th Board of Trustees meeting. On July 9, 2006, the Plaintiff received a letter from the Temple stating that the Board of Trustees had voted unanimously to recommend that her contract be terminated.

The Plaintiff avers that, on or about August 2, 2006, the Temple officially terminated her contract. In December of 2007, the Plaintiff commenced this lawsuit alleging that the Defendant's proffered reasons for her firing did not constitute just cause under the contract because she did not commit "gross misconduct" or "willful neglect". The Defendant moved to dismiss the complaint in or about March of 2008 on the ground that the Religion Clauses of the First Amendment preclude the Court from reviewing the Plaintiff's firing.

The Defendant's reply memorandum in support of the motion to dismiss set off an additional round of motion practice addressing whether the Court could consider "new material" introduced by the Defendant in its reply. Because the Court will not consider or rely upon the "new material" in deciding this motion, it is unnecessary to address the Plaintiff's motion to strike portions of the Defendant's reply.

## II. DISCUSSION

### A. 12(b)(1) Standard

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir.2000). The standard for reviewing a 12(b)(1) motion to dismiss is essentially identical to the 12(b)(6) standard, except that "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova*, 201 F.3d at 113. When considering a motion to dismiss for lack of subject matter jurisdiction, the Court may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional question. *See Robinson v. Gov't of Malaysia*, 269 F.3d 133, 141 n. 6 (2d Cir.2001).

### B. The Defendant's Motion to Dismiss

■ The Plaintiff argues that the Defendant's proffered reasons for her firing did not constitute just cause under the contract because she did not commit "gross misconduct" or "willful negligence". The Plaintiff also asserts a common law claim that the Defendant's breached the covenant of good faith and fair dealing by "fabricat[ing] and exaggerat[ing] situations they thought would constitute gross misconduct and willful neglect." The Defendant counters that the "ministerial exception" precludes the Court from exercising subject matter jurisdiction over the Plaintiff's claims.

"Since at least the turn of the century, courts have declined to 'interfere [ ] with ecclesiastical hierarchies, church administration, and appointment of clergy.'" *Rweyemamu v. Cote*, 520 F.3d 198, 204–5 (2d Cir.2008) (citing *Minker v. Balt. Annual Conference of the United Methodist Church*, 894 F.2d 1354, 1357 (D.C.Cir. 1990)). In recognizing a ministerial exception to the jurisdiction of the federal courts, some courts have invoked the "right to church autonomy secured by the Free Exercise Clause," while "[o]thers have emphasized that taking sides in a religious dispute would lead an Article III court into excessive entanglement in violation of the Establishment Clause." *Rweyemamu*, 520 F.3d at 205 (citations omitted). Although the textual source of the ministerial exception may be unsettled, *Rweyemamu* confirms "the vitality of [this] doctrine in the Second Circuit." *Id.* at 207.

In *Rweyemamu*, the plaintiff, a Catholic priest, alleged that his for cause termination-predicated upon his poor performance and negative attitude-was merely a pretext for race-based discrimination. *Id.* at 200. The Second Circuit found that the

ministerial exception precluded the Court from exercising jurisdiction because of the "pervasively religious" nature of the ordained priest's duties and because an inquiry into his claims would have entangled the Court in Catholic doctrine. *Id.* at 209. In particular, the Court explained that the Plaintiff's discrimination claim required him to show that the church's proffered reasons for his firing were pretextual; an argument that would necessarily require the Court to "assess the quality" of his sermons and determine whether he was "insufficiently devoted to the ministry." *Id.*

 As the Plaintiff points out, the ministerial exception plainly does not create for religious institutions a charmed existence free from liability for "their torts and upon their valid contracts." *Id.* (quoting *Rayburn v. Gen. Conference of Seventh–Day Adventists,* 772 F.2d 1164, 1171 (4th Cir.1985)). However, the Free Exercise Clause does protect a " 'church's right to decide matters of governance and internal organization.' " *Id.* at 208 (citing *Petruska v. Gannon Univ.,* 462 F.3d 294, 307 (3d Cir.2006)). "The more 'pervasively religious' the relationship between an employee and his employer, the more salient the free exercise concern becomes." *Rweyemamu,* 520 F.3d at 208. Here, it is undisputed that, as a Rabbi, the Plaintiff exercised a pervasively religious function. The Plaintiff argues instead that this is a purely secular contract case that would not require the Court to entangle itself in religious doctrine. The Court disagrees.

"The Establishment Clause forbids 'excessive government entanglement with religion.' " *Rweyemamu,* 520 F.3d at 208 (citing *Lemon v. Kurtzman,* 403 U.S. 602, 613, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971)). The Second Circuit teaches that certain claims, regardless of their "emblemata," may "inexorably entangle [the courts] in

doctrinal disputes." *Id.* at 208 (citing *Natal v. Christian & Missionary Alliance,* 878 F.2d 1575, 1577 (1st Cir.1989)). In this sense, the fact that the Plaintiff asserts causes of action sounding in violations of state contract law does not alter the Court's analysis. *See Kraft v. Rector, Churchwardens & Vestry of Grace Church in New York,* 2004 WL 540327, at *4 (S.D.N.Y. Mar. 17, 2004) (finding that "although the instant suit asserts common law claims, rather than federal statutory claims, the same constitutional principle applies to both, and bars court review of church decisions regarding the employment of ministers.").

Here, adjudicating the Plaintiff's claim would, as in *Rweyemamu,* necessarily require the Court to review the Plaintiff's performance of her rabbinical duties. This is precisely the type of inquiry that the First Amendment prohibits. The Plaintiff's duties included, among other things, selecting readings from the Torah, and establishing policies for funeral services as well as Bar Mitzvah and Bat Mitzvah services. These are purely religious matters in which the Court may not interfere. *See Rweyemamu,* 520 F.3d at 207 (finding that the Court "will not subject to examination the genuineness of a proffered religious reason for an employment action") (emphasis added).

Nevertheless, the Plaintiff urges the Court to exercise its "powers of equity" to find that the Defendant breached the covenant of good faith and fair dealing. However, this argument misapprehends the nature of the Court's jurisdiction. Having found that the Court lacks subject matter jurisdiction over the Plaintiff's claims, the Court is powerless to grant the Plaintiff any form of relief. Accordingly, the Plaintiff's complaint must be dismissed.

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that the Defendant's motion to dismiss the Plaintiff's complaint is granted, and it is further

**ORDERED,** that the Clerk of the Court is directed to close the case.

**SO ORDERED.**