Monserate FERNANDEZ, Plaintiff,

v.

PETER J. CRAIG & ASSOCIATES, P.C., Defendant.

No. 12–cv–5168(NG)(MDG).

United States District Court, E.D. New York.

Dec. 4, 2013.

Hashim Rahman, Brooklyn, NY, for Plaintiff.

Peter J. Craig, Pittsford, NY, for Defendant.

*OPINION & ORDER*

GERSHON, District Judge:

Defendant Peter J. Craig & Associates, P.C. brings this motion pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, seeking to dismiss the complaint of plaintiff Monserate Fernandez for lack of subject matter jurisdiction. Plaintiff opposes the motion and requests a pre-motion conference to discuss his intended motion to amend the complaint.

## I. Background and Procedural History

### A. Factual Allegations

Plaintiff Monserate Fernandez, an adult individual residing in Queens, New York, brings this action on behalf of himself and others similarly situated against defendant Peter J. Craig & Associates, P.C. (the "Firm" or "defendant"), and against John Does # 1–5, certain employees of the Firm. Plaintiff alleges that defendants have violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA"), as well as Section 601 of the New York State General Business Law.

The allegations arise out of plaintiff's receipt of a letter from the Firm, dated August 22, 2012, enclosing a document referred to as the "Statement of Account," which indicated that plaintiff owed $11,-354,63 in connection with a Perkins Loan he obtained from the Rochester Institute of Technology ("RIT"). (*See* Compl.[1] ¶¶ 19–20, 26; *see also* Craig Decl.[2] Ex. A.) The August 22 letter is signed by "Megan Keymel, Collections Paralegal," on behalf of Peter J. Craig & Associates, P.C., and contains the statement, "This is an attempt to collect a debt, and any information obtained will be used for that purpose." (Craig Decl. Ex. A, at 1.) Plaintiff alleges that the Firm was either employed by RIT for the purpose of collecting the debt, or that the debt was assigned or transferred by RIT to the Firm, but that Peter J. Craig & Associates, P.C. is not authorized to do business in New York, nor does it hold a valid debt collector license. (Compl. ¶¶ 22, 24–25.)

Moreover, plaintiff alleges that several of the entries contained on the Statement of Account, which purport to relate to certain legal proceedings initiated against plaintiff, are false or inaccurate. (*See id.* ¶¶ 28–41.) Plaintiff further alleges that the entries relating to interest charges are improper because the promissory note giving rise to the debt does not provide for such interest. (*See id.* ¶¶ 43–46.)

Plaintiff alleges that the Firm has violated the FDCPA by employing false and deceptive means to collect a debt, using a false entity name, threatening to take an action it was not entitled to take, and attempting to collect amounts not authorized by the underlying agreement. (*See id.* ¶¶ 55, 57, 59.) Plaintiff also alleges that the Statement of Account contains

**1.** Class Action Complaint, October 13, 2012, ECF Document # 1.

**2.** Declaration of Peter J. Craig, August 6, 2013, ECF Document # 59.

false, inaccurate and invalid entries and misrepresents the amount of the debt and the services rendered in connection with the debt. (*See id.* ¶¶ 56, 58, 60.) Plaintiff further alleges that the Firm violated § 601 of New York's General Business Law by attempting to collect fees and costs that are not due or chargeable against the plaintiff. (*Id.* ¶ 65.)

In the Complaint, plaintiff seeks statutory damages under the FDCPA, as well as actual damages stemming from the "humiliation, anger, anxiety, emotional distress, fear, frustration and embarrassment" that he suffered as a direct consequence of defendant's conduct. (*Id.* ¶ 51.) Plaintiff also seeks a declaratory judgment and money damages in connection with his claim under § 601.

Since plaintiff alleges that the Firm sent similar account statements and communications to other consumers around New York State, he alleges that class litigation is appropriate. To that end, he proposes two class definitions: One class would be comprised of consumers who received from defendant an account statement containing false or impermissible charges; the other proposed class would be comprised of consumers who received correspondence from an entity doing business under the name "Peter J. Craig & Associates, P.C.," which name plaintiff alleges is false. (*See* Compl. ¶¶ 16–17.)

## B. Procedural History

Plaintiff commenced this action in October 2012, and the Firm filed its Answer on December 17, 2012. An initial conference was held January 29, 2013, before Magistrate Judge Marilyn D. Go. The parties engaged in settlement discussions between themselves and subsequently participated in several rounds of settlement conferences with Judge Go.

On May 8, 2013, counsel appeared for the first time before me, in connection with a pre-motion conference to discuss, *inter alia,* plaintiff's intended motion to disqualify counsel to defendant.[3] The parties also discussed their previous efforts at settling this matter, as well as the potential effect of a Rule 68 offer of judgment for statutory damages with the issue of attorneys' fees to be resolved by the court:

> Mr. Craig:[4] I would point out that we have made a settlement offer to the plaintiff for that full thousand dollars. That was rejected.
>
> Mr. Rahman:[5] He has made a settlement offer for a thousand dollars about a week ago. We have invited the settlement offer and we put it on the table for a while.
>
> The Court: Is that the maximum available to you under the statute?
>
> Mr. Rahman: That is the maximum available under statutory damages but this is also filed as a class action.
>
> The Court: There has been no motion for class relief?
>
> Mr. Rahman: No.
>
> The Court: Thinking about class relief, you have already identified so many things that sound very particular to your client, that is one; and two, you have—right now, you have one client?
>
> Mr. Rahman: Yes.

---

3. This motion was determined to be premature. (*See* Tr., May 8, 2013, at 31; a copy of the transcript is annexed to the Craig Decl. at Exhibit A–1, A–2, ECF Documents # 64–1, 65–1.)

4. Peter J. Craig, Esq., attorney for defendant Firm.

5. Hashim Rahman, Esq., attorney for plaintiff.

The Court: And he can get his full relief. And if you go forward, what are you going forward for other than your attorney's fees?

. . . .

Mr. Rahman: Your Honor, we have provided a reasonable counter-offer and we wanted to include that the account be returned back to RIT.

. . . .

And I do understand the client takes precedence but these cases would never come to the court in the hands of debtors if the statute didn't provide for a reasonable compensation to the attorneys who bring them.

. . . .

The Court: But one could have an agreement and then Mr. Rahman could make his application for fees.

Mr. Rahman: Yes, that is fine with me.

The Court: Then the Court could decide what was reasonable.

Mr. Rahman: If Mr. Craig was to make a Rule 68 offer, we wouldn't be able to refuse that. That hasn't been the case though. This is just a settlement discussion but if he was to make a Rule 68 offer for statutory damages, there is no way I could refuse that. I would have to present that to my client.

. . . .

The Court: So why don't you do $1,000 and leave the attorneys fees issue to the Court?

Mr. Rahman: That is fine with me.

(Tr., May 8, 2013, at 22–25.)

Notwithstanding this hopeful exchange, the parties were unable to enter into a settlement agreement at that time. Following the May 8 proceedings, the parties engaged in further settlement discussions with Judge Go, who was simultaneously overseeing discovery. On July 9, 2013, the parties, along with representatives from non-party creditor RIT, appeared before Judge Go. While defendant contends that this conference gave rise to an agreement resolving the collection issue between plaintiff and RIT (*see* Craig Decl. ¶ 13), counsel to plaintiff asserts that RIT merely "confirmed that it would not pursue or enter a judgment while the Plaintiff was making payments to his loan" (Rahman Affirm.[6] ¶ 13, n. 6).

Later on July 9, 2013, defendant tendered what it refers to as its "offer to finally resolve this action as well." (Craig Decl. ¶¶ 14.) In an email to Mr. Rahman, defense counsel wrote: "The Defendant hereby offers to settle this matter for $1,001, plus costs, disbursements and reasonable attorney's fees. Please relay this offer to Mr. Fernandez and advise of his answer by July 10, 2013 at 5:00 p.m., after which time it will be deemed rejected and withdrawn." (*Id.* at Ex. D.) In response, counsel to plaintiff sent three separate emails "seeking clarification on why a one-day time limit was imposed, but the Defendant did not respond to the inquiries." (Rahman Affirm. ¶ 3.) On July 11, 2013, defendant filed a pre-motion letter seeking permission to file the instant motion. (*See* Craig Letter, July 11, 2013, ECF Document # 44.) By Order dated July 24, 2013 (ECF Document # 53), I denied defendant's request for a pre-motion conference and instead set a briefing schedule. This motion was fully submitted on August 26, 2013. By Order dated August 27, I granted plaintiff's request to accept his pro-

---

**6.** Affirmation in Opposition to Defendant's Motion to Dismiss, August 21, 2012, ECF Document # 61.

posed sur-reply affirmation as filed. (*See* ECF Documents # 67, 69.)

On September 4, 2013, plaintiff filed a request for a pre-motion conference to discuss his intended motion to amend the complaint. (Rahman Letter, September 4, 2013, ECF Document # 70.) Plaintiff's proposed amendments would dismiss the John Doe defendants and withdraw the claim under § 601 of the New York General Business Law. (*See id.* at Ex. A.) Furthermore, the Proposed Amended Class Action Complaint would assert additional factual allegations relating to: the communications received by plaintiff from the Firm; defendant's alleged violation of the federal regulations governing Perkins Loans; developments in the relationship between plaintiff and RIT and that between plaintiff and the Firm during the pendency of this action and the underlying collection case in New York State Court. Plaintiff asserts that these additional factual allegations give rise to further violations under the FDCPA, The proposed class definitions and the allegations relating thereto, however, have not been amended. (*See id.* ¶¶ 12–13.)

By letter dated September 11, 2013, defendant opposed plaintiff's request for a pre-motion conference, arguing, *inter alia,* that plaintiff's intended motion cannot be considered until the court has ruled on the instant motion. (*See* Craig Letter, September 11, 2013, at 2, ECF Document # 71.) Defendant further asserted that it would oppose plaintiff's motion on the basis of undue delay, bad faith and undue prejudice, and futility. (*Id.* at 1–3.)

While these requests were pending, discovery was continuing, acrimoniously; before Judge Go. Defendant's requests to stay discovery were largely denied (*see* ECF entries, September 16 and October 7,

2013); however, plaintiff's counsel was prohibited from communicating with RIT pending determination of the present motion (*see* ECF entry, October 1, 2013).[7] Then, by letter filed at 5:09 p.m. on October 15, 2013, defendant sought to stay the deposition of Peter J. Craig, Esq., which had been scheduled for 10:30 a.m. the following morning. (*See* Craig Letter, October 15, 2013, ECF Document # 86.) By letter dated October 16, 2013, plaintiff advised the court that Mr. Craig had refused to participate in the deposition and sought leave to move for the imposition of sanctions in order to recover costs and fees. (Rahman Letter, October 16, 2013, ECF Document # 87.) By letter dated October 18, 2013, plaintiff sought from Judge Go an extension of time to complete discovery and an order requiring defendant to pay the costs and fees associated with the terminated deposition. (Rahman Letter, October 18, 2013, ECF Document # 88.) Judge Go met with the parties on October 23, 2013, at which time she ordered defendant to pay $150 in costs for the terminated deposition and stayed discovery, on consent of the parties, pending the determination of plaintiffs motion to amend. (ECF Entry, October 23, 2013.)

## II. Analysis

### A. The Rule 12(b)(1) Motion to Dismiss the FDCPA Claim

▮ "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000). Since "Article III of the United States Constitution limits the judicial authority of the federal courts to 'Cases' and 'Contro-

---

7. The plaintiff, himself, was permitted to continue communicating with RIT in connection only with his loan and repayment. (*See* ECF entry, October 1, 2013.)

versies,' ... a court will not have subject matter jurisdiction over an action absent the requisite case or controversy." *S. Jackson & Son, Inc. v. Coffee, Sugar & Cocoa Exchange Inc.*, 24 F.3d 427, 431 (2d Cir.1994). "In order to achieve the status of a case or controversy, a dispute must exist between two parties having adverse legal interests," *Id.* Where, however, the "parties lack a legally cognizable interest in the outcome," the case is moot and must be dismissed. *Powell v. McCormack*, 395 U.S. 486, 496–97, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969); *see also Fox v. Board of Trustees of State University of New York*, 42 F.3d 135, 140 (2d Cir.1994) ("The required legally cognizable interest has alternatively been described as a requirement that a plaintiff have a 'personal stake' in the litigation") (citations omitted).

■ "Where a defendant offers judgment in an FDCPA case for the maximum relief obtainable by plaintiff, an action becomes moot and subject to dismissal because there exists no controversy pending court adjudication," *Milton v. Rosicki, Rosicki & Associates, P.C.*, 2007 WL 2262893, at \*2 (E.D.N.Y., Aug. 3, 2007). To the extent the defendant "consents to judgment in the maximum amount for which the defendant could be held liable, there is no justification for taking the time of the court and the defendant in the pursuit of ... claims which [the] defendant has more than satisfied." *Doyle v. Midland Credit Management, Inc.*, 722 F.3d 78, 80 (2d Cir.2013) (per curiam) (internal quotation marks and citation omitted) (alteration in original).

■ An offer of or consent to judgment "need not comply with Federal Rule of Civil Procedure 68 in order to render a case moot under Article III." *Id.* at 81. However, if the offer does not represent "the maximum recovery available to [plaintiff] in this lawsuit, there is no basis for

defendant's assertion that [the offer] moots this action" *Shepherd v. Law Offices of Cohen & Slamowitz, LLP*, 668 F.Supp.2d 579, 582 (S.D.N.Y.2009). Similarly, a plaintiff's refusal to accept a conditional offer of *settlement* will not moot the case. *See McCauley v. Trans Union, L.L.C.*, 402 F.3d 340, 342 (2d Cir.2005), And, an offer of settlement that does not provide for the entry of judgment is not the equivalent of a Rule 68 offer of judgment and is not treated as such. *Cabala v. Crowley*, 736 F.3d 226, 229–31 (2d Cir. 2013).

■ Here, there is no dispute that the offer tendered by defendant did not comply with the formalities of Rule 68 of the Federal Rules of Civil Procedure, which provides:

(a) At least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued. If, within 14 days after being served, the opposing party serves written notice accepting the offer, either party may then file the offer and notice of acceptance, plus proof of service. The clerk must then enter judgment.

. . . .

(d) Paying Costs After an Unaccepted Offer. If the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made.

Fed. R. Civ. P, 68 (2009). "The plain purpose of Rule 68 is to encourage settlement and avoid litigation." *Marek v. Chesny*, 473 U.S. 1, 5, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985). "Because a Rule 68 offer has a binding effect when refused as well as accepted, a party must also have a clear understanding of the terms of an offer in order to make an informed choice

not to accept it." *Boorstein v. City of New York*, 107 F.R.D. 31, 34 (S.D.N.Y.1985).

■ Beyond non-compliance with the formalities of Rule 68 relating to service and timing, defendant here did not "offer to allow judgment," but rather, offered only to "settle this matter for $1,001, plus costs, disbursements and reasonable attorney's fees." (Craig Decl. Ex. D.) The distinction is important because, while the terms of the settlement agreement may be enforced in accordance with contract law, "a judgment may be enforced using all the remedies available to a judgment creditor." *Cabala*, 736 F.3d at 230.

Defendant relies on *Doyle v. Midland Credit Management, Inc.*, to support its contention that its offer of settlement is nonetheless sufficient to render this case moot.[8] In *Doyle*, the Court of Appeals for the Second Circuit held that "an offer need not comply with Federal Rule of Civil Procedure 68 in order to render a case moot under Article III," 722 F.3d at 81. That case is different, however, insofar as the defendant debt collector in *Doyle* made two *offers of judgment* in efforts to resolve plaintiff's FDCPA claim. The first offer, for $1,001, had been made pursuant to Rule 68 and rejected. The second offer was made orally during a motion hearing and included "an additional $10 to cover actual damages." *Id* at 80. Although plaintiffs counsel agreed that this amount provided for all the relief sought, plaintiff refused the offer. *Id.* The district court found that the offer served to moot the FDCPA claim and granted defendant's motion to dismiss. *Id.* The Second Circuit

affirmed on appeal, concluding that "the oral offer for $1,011 that [defendant] extended during the motion hearing ... was for the full amount of relief sought," and, although it was made orally, it nonetheless rendered the case moot. *Id.* at 81.

■ As stated, the offer here failed to conform to Rule 68 not merely on the basis of formality, but because it did not provide for the entry of judgment against defendant. And, in its recent decision in *Cabala v. Crowley*, the Second Circuit rejected the "argument that [defendant's] settlement offer should be treated as equivalent to a Rule 68 offer of judgment." 736 F.3d at 230, The *Cabala* Court also expressly stated that *Doyle s* holding, "that an offer of judgment that fails to meet the technical procedural requirements of Rule 68 is nevertheless an offer of judgment *is not equivalent* to holding that an offer of an informal settlement without judgment is equivalent to a Rule 68 offer of judgment." *Id.* at 230 (emphasis added). I therefore cannot conclude that plaintiff's rejection of defendant's offer of settlement acts to moot plaintiffs claim.

However, I do take this opportunity to remind the parties that the resolution of this action is firmly within their grasp. Plaintiff's counsel has as much as agreed to accept a properly served Rule 68 offer of judgment for statutory damages, and defense counsel has more than signaled his willingness to tender that amount.[9] As the *Cabala* Court noted, "[i]t takes two to stage a useless litigation," *id.* at 229, and I encourage counsel to proceed in a manner

---

8. Indeed, it appears that defendant's offer of settlement, and the present motion, were made immediately after the decision in *Doyle* was rendered: the *Doyle* decision was filed June 28, 2013; defendant *made its offer on July 9* and filed its pre-motion letter on July 11, 2013.

9. In light of my conclusion here, I need not address the impact of the purported demand

for actual damages or the putative class allegations on the ability of defendant's offer to moot plaintiff's FDCPA claim. With an eye toward the future of this litigation, however, I note that plaintiff's arguments on these points are, under the facts of this case, specious. The allegations relating to the claim for actual damages are conclusory and devoid of any factual basis, and plaintiff's counsel has al-

that will best serve the interests of their clients without needlessly burdening the resources of the judiciary.

## B. The § 601 Claim

 Defendant has not expressly sought dismissal of the claim asserted pursuant to § 601 of New York's General Business Law, but nonetheless asserts in its supporting memorandum that "that statute provides no private right of action." (Def. Mem. in Supp. 3.) Plaintiff has neither responded directly to this argument nor made any mention of the existence of an open § 601 claim in his opposition to the motion to dismiss. Moreover, this claim has been omitted from the proposed amended complaint, and the law is clear that there is no private right of action created by this statute.[10]

The § 601 claim is therefore treated as withdrawn.

## C. The Proposed Amended Complaint

In the event the parties elect to continue pursuing this litigation. I turn, next, to plaintiff's intended motion to amend the complaint. Having reviewed the parties' pre-motion submissions, which include the proposed amendments. I see no reason to schedule a pre-motion conference. Rather, plaintiff's September 4, 2013 letter is hereby converted into a motion to amend. Although defendant's September 11, 2013

letter provides the contours of the Firm's arguments against acceptance of the proposed amendments, it does not provide the legal basis for such arguments. Defendant is therefore directed to serve and file, on or before December 20, 2013, a letter brief not to exceed ten pages, setting forth its opposition to plaintiff's motion. Plaintiff shall reply by letter brief, no longer than ten pages, on or before January 10, 2014.

In accordance with Judge Go's order of October 23, 2013, discovery is stayed pending resolution of this issue.

## D. "Other Considerations"

Finally, with respect to the assertions by counsel to both parties that the other side has included in its filings embarrassing allegations that have no bearing on the present action, paragraphs 16 and 17 of Mr. Rahman's Affirmation in Opposition are hereby stricken, as are paragraphs 15–20 of Mr. Craig's Reply Declaration,[11] and paragraph 6 of Mr. Rahman's Sur–Reply Affirmation.[12] To the extent such ad hominem attacks or other gratuitous allegations are asserted in the future, I will consider the imposition of sanctions.

SO ORDERED.

---

ready indicated that statutory damages—plus legal fees, of course—would be a sufficient award for his client. *See* p. 4, *supra* (quoting Tr., May 8, 2013, at 22–25). Furthermore, after more than a year of litigation, plaintiff has not yet moved for class certification and has even conceded that "certification seems unlikely at present" (Plf. Mem. in Opp. 5.) Also, I have expressed concern as to whether plaintiff's counsel would be an adequate class representative. (*See* Tr., May 8, 2013, at 23.)

**10.** Article 29–H of the Debt Collection Procedures Act authorizes "[t]he attorney general or the district attorney of any county [to]

bring an action in the name of the people of the state to restrain or prevent any violation of this article or any continuance of any such violation." N.Y. Gen. Bus. § 602(2). As such, this statute does not give rise to a private right of action. *Citibank (South Dakota) N.A. v. Sablic*, 55 A.D.3d 651, 653, 865 N.Y.S.2d 649 (2d Dep't 2008).

**11.** Reply Declaration. August 26, 2013. ECF Document # 63.

**12.** Sur–Reply to Defendant's Reply, August 27, 2013, ECF Document # 67.