[44 NYS3d 412]

Wendy White, Respondent, v Metropolitan Opera Association, Inc., Appellant.

First Department, January 5, 2017

## APPEARANCES OF COUNSEL

*Proskauer Rose LLP*, New York City (*Howard Z. Robbins, Harris M. Mufson* and *Nayirie Kuyumjian* of counsel), and *Katz & Rychik, P.C.*, New York City (*Abe M. Rychik* of counsel), for appellant.

*Edelman & Edelman, P.C.*, New York City (*David M. Schuller* and *Howard Engle* of counsel), for respondent.

## OPINION OF THE COURT

Acosta, J.

Defendant Metropolitan Opera Association, Inc. (the Met) operates the Metropolitan Opera House at Lincoln Center. Plaintiff, Wendy White, is a renowned opera singer who has been featured in more than 500 performances at the Met over the course of 23 years. This personal injury action arises from plaintiff's fall from an elevated platform while performing at the Met.

This appeal involves interpretation of Workers' Compensation Law § 2 (4), which was enacted in 1986 to provide a definition of employee for those in the performing arts. Section 2 (4), in relevant part, defines an "employee" to include: "a professional musician or a person otherwise engaged in the perform-

ing arts who performs services as such for . . . a theatre . . . or similar establishment . . . unless, by written contract, such musician or person is stipulated to be an employee of another employer covered by this chapter."

Plaintiff alleges that, on December 17, 2011, during her performance of the role of Marthe in the Met's production of the opera Faust, she fell and was seriously injured while walking from a backstage staircase to an on-stage elevated platform. She alleges that the accident was caused by a defect in the set's design or construction resulting from the Met's negligence. She further alleges that she performed at the opera house pursuant to a standard contractor's agreement between the Met and her corporation, Wendy White, Inc. (WW, Inc.), and that neither she nor WW, Inc. were the Met's "employees."

The Met moved to dismiss the complaint pursuant to CPLR 3211 (a) (1) and (7), arguing that documentary evidence conclusively established that plaintiff was an employee engaged in the performing arts, as defined by Workers' Compensation Law § 2 (4), or, alternatively, a special employee of defendant, since the Met controlled the manner in which she performed her work, and that therefore her claim was barred by the exclusive remedy provision of Workers' Compensation Law § 11.

The Met argued that plaintiff indisputably performed for it as a performing artist and that she was an employee for purposes of the Workers' Compensation Law. In support, the Met submitted the "Standard Contractor's Agreement (Per Performance)" pursuant to which WW, Inc., defined as "Contractor," "agree[d] to furnish to The Met the services of its employee, Wendy White ('Singer'), as singer on an individual performance basis."

The agreement detailed the period of engagement, during which plaintiff was required to reside in the New York metropolitan area, and to "immediately report[ ]" any "indisposition." Plaintiff was also required to notify the Met whenever she was absent from her residence for more than two hours on a rehearsal or performance date. Payment for each performance was to be made to WW, Inc.

The agreement incorporated by reference the terms of the collective bargaining agreement (the CBA) between the Met and the American Guild of Musical Artists, Inc., to which plaintiff belonged. The CBA covered all "ARTISTS" engaged by the Met, including "Solo Singers," but not "any group of ART-

ISTS engaged by the Met which performs independently of the regular Metropolitan Opera Company." The CBA required that all contracts be in one of six specified forms, including the "Standard Contractor's Agreement (Per Performance)" used here. It also required that, "to the extent permitted by law," the Met "make the payments required" to maintain, among other things, "Workers' Compensation coverage for all ARTISTS."

With respect to "Principal" artists, including plaintiff, the CBA specified penalties for being unprepared to perform or failing to appear at scheduled rehearsals or performances. It also required that Principals wear their make-up "according to the standards and specific instructions of the Met" and participate in photo calls "at no additional compensation."

In addition, the Met submitted a copy of the New York workers' compensation insurance policy it had in place at the time of the accident. The Met also submitted an affidavit by Mark Dieffenbach, a claims specialist in the workers' compensation claim unit of the Met's insurance carrier, The Hartford. Dieffenbach averred that the Met had submitted a claim in connection with the subject accident, which The Hartford had accepted "without prejudice," and pursuant to which The Hartford had made payments to plaintiff's medical care providers.

The Met additionally submitted a "Notice of Proposed Decision" from the New York State Workers' Compensation Board (the WCB), which found that plaintiff "had a work related injury," and ordered payment. Plaintiff later objected to this decision on the grounds that the Met was not her employer and that she never filed a New York workers' compensation claim; she filed a claim in New Jersey against WW, Inc. In response, the WCB issued a "Notice of Cancellation of Proposed Decision," which explained that "[c]laimant wants the case to be discontinued as [s]he has filed claim in New Jersey."

In opposition, plaintiff argued that this action was not barred by the Workers' Compensation Law because the Met was not her employer within the meaning of the statute. She argued that she was not an "employee" under Workers' Compensation Law § 2 (4) because she worked pursuant to a "per performance" agreement between WW, Inc. and the Met, and therefore came within the exception applicable to a person who "by written contract . . . is stipulated to be an employee of another employer covered by" the statute. Further, she did not cede

total control of her performance to the Met, and thus the Met did not become her special employer.

Plaintiff submitted her own affidavit, in which she averred that she was not employed by the Met but, instead, by WW, Inc. She explained that she was always paid by WW, Inc., and that WW, Inc. only received 1099's, not W-2's, from the Met. She also did not receive any employment benefits from the Met, and was in fact told that she did not qualify for the Met's health insurance plan because she was not an employee.

Plaintiff asserted that she was a "star" and that, as such, she had "full artistic control" over her performance, including choosing "the timbre, the volume, the projection, and all of the artistry in the form of nuance, inflection and the acting." She claimed to have received no training, supervision, or direction from the Met with respect to how to perform her role, and explained that her voice lessons and coaching were paid for by WW, Inc. She admitted, however, that the Met provided her make-up, costumes, and wigs, told her "where and when to attend rehearsals and performances," and "blocked out the basic staging with entrances and exits"—although she purported to have veto power even with respect to staging decisions.

Additionally, plaintiff stated that she was not aware that the Met purchased workers' compensation insurance for her, and never consented to any claim being filed thereunder. She explained that she only found out later that certain medical bills had been paid by the Met's insurance carrier, and rejected any subsequent offers of payment. Instead, she filed a claim in New Jersey under WW, Inc.'s workers' compensation insurance policy.

Plaintiff also submitted statements by Assemblyman Roger J. Robach and New York State Senator James J. Lack, the sponsors of the 1986 amendment to the Workers' Compensation Law that added section 2 (4), addressing the employment status of performing artists. Robach explained in a letter to the Governor's Counsel that the amendment was intended to clarify that "the vast majority [of musicians and performers] who are not in the 'star' category" were employees entitled to workers' compensation benefits, without having to litigate their status. In an affirmation submitted with the motion, Lack explained that "[t]he bill was not intended to compel 'star' performers, who are independent professionals able to negotiate the terms of their engagements, to become 'employees' of the venues at which they perform."

The motion court denied the Met's motion to dismiss the complaint, holding that the Met did not present sufficient evidence to prove that plaintiff was its "employee" at the time of the accident. The court found the contract, the CBA, and the insurance policy inconclusive, and observed that the policy did not even specify who was covered. The court found that the fact that The Hartford paid some of plaintiff's medical bills was not dispositive, as these payments were made "without prejudice." The court distinguished the primary case relied on by the Met (*Fouchecourt v Metropolitan Opera Assn.*, 537 F Supp 2d 629 [SD NY 2008]) on the ground that the injured party in that case was not employed by a separate entity. The court also noted that the Met had previously taken the position, in an unrelated case, *Metropolitan Opera Assn., Inc. and Operatic Artists of America* (1999 WL 112550, *9, 1999 NLRB LEXIS 113, *29-30 [Case 2-RC-21699, Feb. 26, 1999]), that solo artists, including corporate artists, engaged on a per performance basis, were not considered employees. Although the court found that plaintiff failed to demonstrate that WW, Inc. had obtained a workers' compensation policy compliant with the Workers' Compensation Law, it held that "this does not mean that [plaintiff] is necessarily covered by the Met's worker[s'] compensation policy," observing that the statutory consequence of failing to obtain such a policy was simply payment of a penalty.

We agree with the motion court and therefore affirm. Workers' Compensation Law § 2 (4) defines "employee" to include "a professional musician or a person otherwise engaged in the performing arts who performs services as such for . . . a theatre . . . or similar establishment . . . unless, by written contract, such musician or person is stipulated to be an employee of another employer covered by this chapter." Here, plaintiff's services were provided to the Met pursuant to a per-performance contractor's agreement, entered into between her corporation and the Met, that provided that the corporation "agree[d] to furnish to The Met the services of its employee, Wendy White . . . , as singer on an individual performance basis." Plaintiff's corporation meets the definition of an "employer covered by this chapter," inasmuch as it is a corporation "having one or more persons in employment" (Workers' Compensation Law § 2 [3]). Thus, by written contract, plaintiff was stipulated to be an employee of another employer (*compare Fouchecourt v Metropolitan Opera Assn.*, 537 F Supp 2d 629,

633 [SD NY 2008], *supra* [exception to definition of "employee" not applicable to injured opera singer who contracted directly with defendant]).

The Met is correct that the plain language of Workers' Compensation Law § 2 (4), which is "the clearest indicator of legislative intent" (*Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577, 583 [1998]), draws no distinction between regular performers and stars. Nor have courts been inclined to draw such a distinction generally, although none of the cases cited by the Met address the statutory exception specifically. For example, in *Fouchecourt*, the district court reviewed the legislative history—including the materials plaintiff relies on here—and held that "*all* musicians and performing artists are deemed to be 'employees' for [Workers' Compensation Law] purposes" (537 F Supp 2d at 633). However, the court in *Fouchecourt* was not addressing the question at issue here, i.e., whether Workers' Compensation Law § 2 (4) applies to "stars" who negotiate the terms of their appearance through a company that employs them; it was focused on whether someone who contracted directly with the Met as an "independent contractor" for tax purposes could still be an employee under the statute. Similarly, in *Makarova v United States* (201 F3d 110, 116 [2d Cir 2000]), the Second Circuit found that a preeminent ballet dancer was an "employee" within the meaning of the Workers' Compensation Law and specifically rejected her argument that, as a star, she could not be the defendant's "employee." But, again, the court was focused on a different question from the one in this case—i.e., the plaintiff's status at common law (her accident occurred before enactment of Workers' Compensation Law § 2 [4]).

That being said, to the extent the scope of the exception language is unclear, the legislative history may be examined (*see Matter of Shannon*, 25 NY3d 345, 351 [2015]). Here, the legislative history supports plaintiff's suggested distinction, since it indicates that the statutory definition of employee was intended to protect the vast majority of performers, who are not "stars," and that the statutory exception was designed to exclude those performers with the clout to negotiate the terms of their own engagements.*

---

* It is important to note, however, as the Met points out, that subsequent legislative activity, while less persuasive, cuts in the other direction. The Legislature has thrice attempted to amend Workers' Compensation Law

Contrary to the Met's contention, it is not necessary for plaintiff to demonstrate that her corporation maintained a workers' compensation policy "issued under the law of this state," as required by Workers' Compensation Law § 50 (2). That requirement is an obligation imposed on a corporation that is an employer; it is not a prerequisite for employer status (*see* Workers' Compensation Law §§ 50 [2]; 2 [3]). Moreover, Workers' Compensation Law § 54 (6) (c) provides that corporations, such as plaintiff's, whose sole employee is an executive officer who owns 100% of the stock, need not purchase workers' compensation insurance for the employee. There is also no policy reason to find that plaintiff's corporation is not her employer, since this is not a situation in which a corporation is seeking to invoke the benefits of the immunity provision of Workers' Compensation Law § 11 without fulfilling its corresponding obligation under the statute (*see Boles v Dormer Giant, Inc.*, 4 NY3d 235, 240 [2005]).

To the extent the common-law special-employee doctrine continues to apply, the Met failed to submit documentary evidence establishing conclusively that it "assumed *exclusive* control over 'the manner, details and ultimate result of the employee's work' " (*Bellamy v Columbia Univ.*, 50 AD3d 160, 162, 164 [1st Dept 2008] [emphasis added]).

We have considered the Met's remaining arguments and find them unavailing.

Accordingly, the order of the Supreme Court, New York County (Shlomo S. Hagler, J.), entered November 10, 2015, which denied defendant's motion to dismiss the complaint pursuant to CPLR 3211 (a) (1) and (7), should be affirmed, without costs.

Tom, J.P., Andrias and Moskowitz, JJ., concur.

Order, Supreme Court, New York County, entered November 10, 2015, affirmed, without costs.

---

§ 2 (4) to provide that executive officers excluded from coverage under Workers' Compensation Law § 54 (6) (c) are either not employees or are subject to the common-law test rather than Workers' Compensation Law § 2 (4)'s per se rule, but none of these attempts have succeeded (*see* 2016 NY Assembly Bill A10283; 2015 NY Assembly Bill A03390; 2014 NY Assembly Bill A10132). Although this seems to cut in favor of interpreting the statutory exception as not applying to persons like plaintiff who are employed by their own corporation, it is not dispositive.