# United States Court of Appeals
## For the First Circuit

No. 15-1994

UNITED STATES OF AMERICA,

Appellee,

v.

DOUGLAS A. PARIGIAN,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Denise J. Casper, U.S. District Judge]

Before

Kayatta, Stahl, and Barron,
Circuit Judges.

Allison J. Koury for appellant.
Andrew E. Lelling, Assistant United States Attorney, with whom Carmen M. Ortiz, United States Attorney, was on brief, for appellee.

May 26, 2016

**KAYATTA**, **Circuit Judge**. Acting on obviously nonpublic information that a golfing buddy received from a corporate insider, Douglas Parigian made in excess of $200,000 trading in securities. The United States subsequently indicted Parigian for criminal securities fraud. As ultimately amended, the indictment pressed a so-called misappropriation theory against Parigian, arguing that Parigian knew or should have known that, by providing the inside information to Parigian, his buddy both breached a duty of trust and confidence and personally benefited by doing so. See generally United States v. O'Hagan, 521 U.S. 642, 651–53 (1997); SEC v. Rocklage, 470 F.3d 1, 6–7 (1st Cir. 2006). After unsuccessfully moving to dismiss the indictment for failure to allege a crime, Parigian reached an agreement with the government whereby he pled guilty to the charges conditionally, under Federal Rule of Criminal Procedure 11(a)(2), so that this court could then rule on the questions raised by his challenge to the superseding indictment. We now do so, holding that Parigian's preserved challenges to the indictment fall short of the mark.

## I. Background

As ultimately amended, the grand jury's indictment charged Parigian and his golfing buddy co-defendant Eric McPhail[1]

---

[1] McPhail was separately convicted on the indictment's counts following a jury trial. See Order of Judgment, United States v. McPhail, No. 1:14-cr-10201-DJC-1 (D. Mass. Sept. 21, 2015), ECF

with violating 15 U.S.C. §§ 78j(b), 78ff(a), and 18 U.S.C. § 2, by "knowingly and willfully . . . employ[ing] manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities in contravention of [Securities and Exchange Commission ("SEC")] Rule 10b-5." See 17 C.F.R. § 240.10b-5(c). Another count charged them both with conspiracy to commit the same offense.[2] See 18 U.S.C. § 371.

Ordinarily, because this appeal follows a guilty plea, we would derive the facts from the plea agreement, the change-of-plea colloquy, the unchallenged portions of the presentence investigation report, and the sentencing hearing transcript. See United States v. Ocasio-Cancel, 727 F.3d 85, 88 (1st Cir. 2013). But because Parigian's appeal trains solely on the legal adequacy of the challenged superseding indictment, we focus our review within the indictment's four corners. See United States v. Horton, 580 F. App'x 380, 383 (6th Cir. 2014) (unpublished), cert. denied, 135 S. Ct. 1006 (2015) (limiting appellate review "to the four corners of the indictment" when defendant entered conditional

_____

No. 180, appeal docketed, No. 15-2106 (1st Cir. Sept. 23, 2015). His parallel appeal of his criminal conviction is pending.

[2] A third count charged Parigian alone with making false statements in connection with the government's investigation. See 18 U.S.C. § 1001. Parigian ultimately pled guilty to a subsequent information filed by the government that dropped this last charge.

- 3 -

guilty plea preserving right to appeal denial of motion to dismiss based on indictment's failure to state a crime).

In addition to its recitation of the offenses as described and the laws allegedly violated by the defendants, the eighteen-page indictment contained numerous factual allegations describing each person's role in the insider trading scheme. The scheme's insider ("Insider") was an un-indicted individual who served from 2004 to 2011 as an executive at American Superconductor Corporation ("AMSC"), a publicly-traded Massachusetts-based corporation in the business of producing components used in the wind power industry. McPhail and Insider were friends. The indictment claimed that, by 2009, the relationship between McPhail and Insider was one of "trust and confidence, including a history, pattern, and practice of sharing professional and personal confidences." They also shared "an understanding that information conveyed between them was to remain confidential." The indictment expressly alleged that Parigian "was aware of" that relationship and "knew" that Insider was an executive at AMSC.

Beginning no later than July of 2009, Insider began revealing to McPhail highly material inside information about AMSC that allowed McPhail to predict the upshot of impending, yet-to-be-announced earnings reports and major commercial transactions. Notwithstanding his alleged understanding with Insider that he was to treat the information confidentially, McPhail began to

- 4 -

disseminate the information about developments at AMSC, mostly via email, to a circle of regular golfing companions, including Parigian. During the next two years, the tips allowed Parigian to time his purchases and sales of AMSC securities (and options) so as to avoid losses and secure gains in the wake of certain public announcements of the information previously passed to him by McPhail.

The email traffic accompanying this prescient trading indicated that secrecy was the order of the day. One of McPhail's early tips concluded with "SHHHHHHHHHHHHH!!!!!!!!!!!!!!!!!!!" The group discussed whether the information would remain "safe" while they tipped off another person. McPhail stressed the need to use a dedicated email thread, while Parigian claimed that he was deleting his emails.

There is no allegation that McPhail himself engaged in trading. Rather, the indictment posits that he solicited "getting paid back" by Parigian and the others with wine, steak, and visits to a massage parlor. Parigian assured him that "I will take you for a nice dinner at Grill 23." Another tipped trader offered McPhail a free golf outing.

Parigian moved to dismiss the superseding indictment, arguing that it failed to adequately allege several elements of the crime of securities fraud committed by trading on misappropriated inside information. After this motion was denied

by the district court, see United States v. McPhail, No. 14-cr-10201-DJC, 2015 WL 2226249, at *5 (D. Mass. May 12, 2015), Parigian entered into a plea agreement that preserved his right to appeal the denial of the motion. He was sentenced to time served and three years of supervised release, with eight months of home confinement.

## II. Standard of Review

In reviewing a district court's denial of a motion to dismiss an indictment, we review legal questions de novo, any relevant factual findings for clear error, and the court's "ultimate ruling" for abuse of discretion. United States v. Doe, 741 F.3d 217, 226 (1st Cir. 2013) (quoting United States v. Lopez-Matias, 522 F.3d 150, 153 (1st Cir. 2008)).

An indictment is sufficient "if it contains the elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and enables him to enter a plea without fear of double jeopardy." United States v. Yefsky, 994 F.2d 885, 893 (1st Cir. 1993) (citing Hamling v. United States, 418 U.S. 87, 117 (1974)). A well-pleaded indictment can parrot "the statutory language to describe the offense, but it must also be accompanied by such a statement of facts and circumstances as to inform the accused of the specific offense with which he is charged." United States v. Savarese, 686 F.3d 1, 6 (1st Cir. 2012); see also Fed. R. Crim. P. 7(c)(1) (the "indictment . . .

- 6 -

must be a plain, concise, and definite written statement of the essential facts constituting the offense charged").

### III.  Analysis

The government's case against Parigian relies on the "misappropriation" theory of liability for insider trading as recognized in O'Hagan.  In O'Hagan, corporate insiders communicated material, nonpublic information to the corporation's law firm in connection with a proposed tender offer.  O'Hagan, 521 U.S. at 647–49.  O'Hagan, who practiced law at that firm, used the information to trade in the stock of the take-over target.  Id. The court held that O'Hagan's conduct constituted fraud in connection with the purchase or sale of securities because, by breaching his fiduciary duties owed to his firm and to his firm's client, he appropriated confidential information of his law firm's client in a manner that deceived "those who entrusted him with access to confidential information."  Id. at 652.  In short, a misappropriator who knowingly violates a "duty of loyalty and confidentiality," id., and trades to his advantage, "gains his advantageous market position through deception," id. at 656.  "[I]t is that deception which brings this trading within the statutory language."  Rocklage, 470 F.3d at 6.

The indictment seeks to portray McPhail, in the first instance, as the misappropriator, alleging that he owed Insider a duty of trust and confidence that McPhail breached by tipping

Parigian.  It then seeks to hold Parigian liable as a tippee who traded with sufficient awareness of that breach.  This derivative application to a tippee one step removed from the initial violation parallels what often occurs in classical insider trading cases, where liability attaches not just to the insider or to the insider's tippee, but also to a more remote tippee provided that the remote tippee has sufficient knowledge of the facts that make the conduct unlawful.  See, e.g., United States v. Falcone, 257 F.3d 226, 235 (2d Cir. 2001) (affirming conviction of remote tippee who knew "the details of the scheme").  Parigian does not dispute that the misappropriation theory of criminal securities fraud can apply in this manner to a remote tippee.  As in Rocklage, we therefore assume that it can so apply.  See Rocklage, 470 F.3d at 14.

Parigian argues, instead, that the indictment fails to allege criminal securities fraud because:  (1) It does not employ the proper measure of mens rea, (2) It does not adequately allege awareness by Parigian that McPhail's disclosures breached a duty of trust and confidentiality owed to Insider, (3) It does not adequately allege that McPhail received a personal benefit from tipping off Parigian, and, (4) It fails to allege that Insider received a personal benefit.  We address each argument in turn.

## A.    Mens Rea

As we will describe, at various points the indictment alleges that Parigian "knew or should have known" certain facts. In theory, these allegations raise two different issues:  (1) Is "knew or should have known" an appropriate statement of the state of mind (or "mens rea") required to support a criminal conviction of a tippee under 15 U.S.C. § 78ff(a); and/or, (2) Are the facts that Parigian is said to have known or had reason to know sufficient to make his trading unlawful?  In his reply brief, Parigian claims to have raised both issues.  The government, in turn, cries foul, claiming that Parigian has waived any challenge to the "knew or should have known" formulation by failing to raise the challenge in both the district court and in his main brief on appeal.  To explain why we agree with the government, we need first review the case law that bears on the proper definition of mens rea in this criminal case.

The state of mind required to establish liability for fraudulently trading securities depends, in relevant part, on whether the government seeks to establish civil or criminal liability.  In a civil case, the government need only show that "the tippee knows or should know that there has been a breach [of the tipper's fiduciary duty]."  Dirks v. SEC, 463 U.S. 646, 660 (1983).  As the Second Circuit more recently explained in a civil case, the Dirks "knows or should know standard pertains to a

tippee's knowledge that the tipper breached a duty . . . to his principal (under the misappropriation theory), by relaying confidential information." SEC v. Obus, 693 F.3d 276, 288 (2d Cir. 2012).

In a criminal case such as this one, though, the "knew or should have known" formulation runs up against a decades-long presumption that the government must prove that the defendant knew the facts that made his conduct illegal. See generally Elonis v. United States, 135 S. Ct. 2001, 2009-10 (2015); see also Staples v. United States, 511 U.S. 600, 605-06 (1994); United States v. Ford, No. 15-1303, 2016 WL 1458938, at *4-6 (1st Cir. Apr. 13, 2016). There are nevertheless at least two circuit court opinions that apply the Dirks formulation in criminal securities fraud cases. See United States v. Hughes, 505 F.3d 578, 593 (6th Cir. 2007); United States v. Evans, 486 F.3d 315, 324-25 (7th Cir. 2007). In each instance, though, application of the civil mens rea standard proceeded without analysis or, apparently, challenge by the defendant. The better view is that there is simply no reason why the mens rea requirement of scienter that routinely and presumptively applies in criminal cases would not apply in this criminal case where Congress has given no indication that it should not. See United States v. Newman, 773 F.3d 438, 450 (2d Cir. 2014), cert. denied, 136 S. Ct. 242 (2015) (proof that the defendant knew the facts that make his conduct illegal is a

- 10 -

necessary element of criminal Rule 10b-5 violations).  Indeed, in the case of a criminal violation of Rule 10b-5, the government need prove that the defendant "willfully" violated the provision, 15 U.S.C. § 78ff(a), that is, that the defendant acted with "culpable intent," O'Hagan, 521 U.S. at 666 (quoting Boyce Motor Lines, Inc. v. United States, 342 U.S. 337, 342 (1952)).[3]

The indictment appears to have paid inconsistent heed to this mens rea requirement in this criminal securities fraud case. On the one hand, the indictment broadly accused Parigian of "knowingly and willfully" violating Rule 10b-5, "by willfully engaging in a scheme to misappropriate material, nonpublic information about AMSC's finances and business activities and, while in possession of that information, to profit by buying and selling shares, and options on shares, of AMSC stock." On the other hand, in summarizing the factual conclusions supporting the charges, the indictment abandoned the statutory term "willful[]," and abandoned as well the indictment's broadly used formulation of

---

[3] The government misreads O'Hagan as endorsing the "knew or should have known" formulation, even in a criminal case.  While that language does appear in the majority opinion's discussion of O'Hagan's conviction for fraudulent trading in connection with a tender offer under SEC Rule 14e-3(a), see O'Hagan, 521 U.S. at 675, the Court's opinion makes clear that it explicitly declined to consider O'Hagan's arguments regarding Rule 14e-3(a)'s "scienter requirement," and expressly noted that conviction for violating that Rule also required the government to prove that the violation was "willful[]," id. at 677 & n.23 (quoting 15 U.S.C. § 78ff(a)).

"knowingly and willfully."  Instead, the indictment alleged that Parigian "knew or should have known" certain crucial facts, including that "the Inside Information was material and nonpublic and had been disseminated in violation of a fiduciary or similar duty."

In short, had Parigian complained about the inconsistent levels of mens rea embodied in the indictment, he would have had a point.  Whether such a complaint would have garnered much beyond a further amendment of the indictment, we do not know because Parigian never voiced any such complaint, directing his attention instead at whether the facts he was said to know or have had reason to know were sufficient to cover the elements of the crime.[4] Parigian's motion and supporting memorandum made no argument that the indictment was defective because it used the civil formulation of "knew or should have known" as set forth in Obus.  693 F.3d at 292.  To the contrary, Parigian expressly pointed the district court to Obus as setting forth the applicable mens rea standard.[5]

---

[4] For example, Parigian's argument that "[a] remote tippee will not know whether he is subject to a duty to refrain from trading unless he actually knows that the insider's disclosure of information was wrong," went to whether the indictment contained sufficient allegations that Parigian actually knew, but did not address the appropriateness of the "should have known" formulation.

[5] It is possible that what Parigian had in mind is Obus's general introductory discussion of civil mens rea, see Obus, 693 F.3d at 286 ("Negligence is not a sufficiently culpable state of mind to support a section 10(b) civil violation."), rather than its specific application of the Dirks "knew or should have known"

- 12 -

The district court plainly did not read Parigian's motion as challenging the adequacy of the "should have known" formulation. Rather, doing exactly as Parigian urged, the district court relied on Obus as setting forth the relevant mens rea standard. See McPhail, 2015 WL 2226249, at *2 (quoting Obus, 693 F.3d at 289). It then rejected Parigian's primary argument that the relationship between Insider and McPhail, as alleged, was not one such that a duty of trust and confidence could have arisen between the two. Id. at *3-4.

In his opening brief on appeal, Parigian made no claim that the district court overlooked or misunderstood his argument. His opening brief contained no mention at all of the indictment's "knew or should have known" formulation. Instead, it paraphrased the charge as alleging, for example, that he "knew that McPhail's disclosure of the information was 'improper; that is in breach of a duty.'"

Only in his reply brief did Parigian belatedly try to argue that the "knew or should have known" language in the indictment was problematic. And, even then, he limited the argument on what is a reasonably complicated issue to a single

standard to the relevant component of tippee liability, see id. at 287-88 ("Thus, tippee liability can be established if a tippee knew or had reason to know that confidential information was initially obtained and transmitted improperly . . . ."). If that is what counsel intended, neither her brief nor oral argument so clarified.

- 13 -

page, citing not a single criminal case and relying again principally on Obus.

On this record, any argument that the use of the "knew or should have known" formulation rendered the indictment insufficient is both forfeited for failure to raise it below and waived for failure to preserve it on appeal. See Igartúa v. United States, 626 F.3d 592, 603 (1st Cir. 2010) ("Plain error review may be available for forfeited arguments, but it is seldom available for claims neither raised below nor on appeal."); Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 299 (1st Cir. 2000) ("We have held, with a regularity bordering on the monotonous, that issues advanced for the first time in an appellant's reply brief are deemed waived.").[6]

---

[6] Judge Barron agrees that Parigian waived any claim that use of the "knew or should have known" formulation on its own rendered the indictment defective. But Judge Barron would hold that Parigian did do enough to argue that the crime of insider trading requires the government to prove that he actually knew of McPhail's breach of a duty of confidentiality to Insider and not merely that he knew or should have known of that breach. Judge Barron would also hold that Parigian preserved his argument that the indictment was defective because the facts that it sets forth alleging that he knew of the breach--as opposed to that he merely "knew or should have known" of it--did not suffice to "fairly inform[ him] of the charges against which he must defend." United States v. Yefsky, 994 F.2d 885, 893 (1st Cir. 1993). Nevertheless, with respect to that argument, Judge Barron finds that the facts alleged, as we will describe them in the next section of this opinion, were sufficient to give Parigian adequate notice.

- 14 -

## B.    Duty of Trust and Confidence

We turn next to the mens rea argument that Parigian did preserve:  the argument that the indictment does not adequately allege that he knew or should have known that McPhail's disclosures breached a duty of trust and confidence owed to Insider.  This argument poses two questions:  Does the indictment adequately allege that McPhail's tips to Parigian breached a duty of trust and confidence owed to Insider; and, Does the indictment adequately allege that Parigian knew or should have known that the tips to him breached that duty?

The misappropriation theory only applies when there is a breach of a "duty of trust and confidence" owed by the tipper to the insider.  O'Hagan, 521 U.S. at 653.  In O'Hagan, that duty and its breach were obvious precisely because it is clear that a company's legal counsel regularly receives information in trust and confidence.  See id. at 652–53, 653 n.5.  Here, though, the complaint alleges no formal type of fiduciary or confidential relationship between Insider (or AMSC) and McPhail.  Rather, it describes a relationship in which one friend shares obviously confidential information concerning his business with another friend.  So the question is:  Is this relationship, as detailed in the indictment, a relationship that will support the type of breach of trust necessary to support conviction under the misappropriation theory?

O'Hagan described the kinds of relationships that might give rise to such a duty as "a fiduciary or other similar relation[ship]," id. at 670 (quoting Chiarella v. United States, 445 U.S. 222, 228 (1980)), an "agency or other fiduciary relationship," id. at 661, or, simply, "a relationship of trust and confidence," id. at 652 (quoting Chiarella, 445 U.S. at 228); see generally United States v. McGee, 763 F.3d 304, 314 (3d Cir. 2014), cert. denied, 135 S. Ct. 1402 (2015) (describing O'Hagan's "broad[] brush" approach). In the wake of O'Hagan, the SEC turned to its rule-making authority under Section 10(b) of the Securities Exchange Act of 1934, 48 Stat. 891 (codified as amended at 15 U.S.C. § 78j(b)), to "clarify" what kind of relationships could give rise to a "duty of confidence," Selective Disclosure and Insider Trading, 64 Fed. Reg. 72,590, 72,590 (proposed Dec. 28, 1999) (codified as amended at 17 C.F.R. § 240.10b5-2). The resulting rule states that:

> [A] "duty of trust or confidence" exists[, inter alia,] . . . [w]henever the person communicating the material nonpublic information and the person to whom it is communicated have a history, pattern, or practice of sharing confidences, such that the recipient of the information knows or reasonably should know that the person communicating the material nonpublic information expects that the recipient will maintain its confidentiality[.]

17 C.F.R. § 240.10b5-2.[7]

In the abstract, one might reasonably question the extent to which this Rule, including its "knows or reasonably should know" formulation, could serve as fully applicable in a criminal proceeding. Here, though, as we have noted, Parigian waived any objection to the application of that mens rea formulation. Moreover, the indictment expressly alleges that Insider and McPhail actually had an understanding, based on their "history, pattern, and practice," that the information Insider shared with McPhail "was to remain confidential."

Whether the testimony of McPhail and Insider would have backed up this lynchpin allegation we do not know, because Parigian decided to plead guilty. What we can say is that the specific facts alleged in the indictment render the existence of such an understanding plausible. Insider was an executive privy to information that was on its face highly confidential, enough so that a corporate executive would undoubtedly know that it should not be broadcast, and arguably would be unlikely to disclose it to just any casual acquaintance. The disclosures continued over a

---

[7] Parigian briefly states that the SEC "unilaterally expanded insider trading by creating a new class of misappropriation . . . ." It is not clear whether this statement is an observation or the beginning of an argument. If the latter, it doesn't clear the launch pad: as an argument "adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation," we deem it waived. United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

long period of time, and there is no suggestion that Insider received any indication that McPhail was passing along the information to others. All of this is enough to plausibly describe the existence of the requisite duty and its breach and to do so in a manner that "fairly inform[ed] [Parigian] of the charges against which he must defend." Yefsky, 994 F.2d at 893.

Parigian also argues that it "would have been impossible" for him to mount a defense at trial regarding the nature of the relationship between Insider and McPhail because he "was not part of that relationship and did not know what the relationship entailed other than that they were friends and golfing buddies." Parigian may be correct that any defense to this indictment--alleging, as it does, a chain of communications among different pairings of people--would generally be more complicated than if he had been charged with run-of-the-mill fraud. It is also true, though, that the prosecution of such an indictment is more complicated and more difficult than it is in a run-of-the-mill fraud case. See, e.g., Newman, 773 F.3d 438. Moreover, the challenge of resisting the government's case differs little from what defendants routinely shoulder in prosecutions for criminal conspiracy, for example, in which conspirators can be held answerable for the conduct of others who share their "common goal" but are far removed from their own role in the conspiracy. See, e.g., United States v. Alejandro-Montañez, 778 F.3d 352, 358–60

(1st Cir.), cert. denied, 135 S. Ct. 2827, 135 S. Ct. 2905, 136 S. Ct. 92 (2015). In any event, the relevant point is not that defending against the charges would be complicated, or difficult. The relevant point is that the indictment "fairly informed" Parigian of the nature of the charges so that he could then undertake that defense, whether difficult or not.

That leaves the question of Parigian's awareness of that breached duty. The indictment expressly claims that Parigian himself "was aware of the relationship between McPhail and [Insider] and knew that [Insider] was an executive at AMSC." It further claims that Parigian "knew or should have known that the [information disclosed to him by McPhail] was material and nonpublic and had been disseminated in violation of a fiduciary or similar duty." The efforts of Parigian to keep the information secret and delete his emails added grist to the allegation that he was aware that the dissemination to him had been in breach of a duty recognized by the law. Whether these allegations would have been sufficient at trial, we need not say. See Savarese, 686 F.3d at 7 ("Where . . . a defendant seeks dismissal of the indictment, the question is not whether the government has presented enough evidence to support the charge, but solely whether the allegations in the indictment are sufficient to apprise the defendant of the charged offense."). We hold only that, collectively, and given the waiver of any argument about the relevant mens rea standard,

they were enough to do what an indictment need do on this element of the charge.  See id.

## C.    Personal Benefit to Tipper

Parigian's second preserved argument focuses on the presence (or absence) of an anticipated benefit to McPhail from his tipping.  In Dirks, the Supreme Court ruled that under the classical conception of insider trading liability, a tippee is not liable under Rule 10b-5 unless the insider "will benefit, directly or indirectly, from his disclosure."  Dirks, 463 U.S. at 662.  We have twice considered in SEC civil enforcement actions the question whether a benefit to the misappropriator is also a necessary element to establishing liability for violating Rule 10b-5.  See Rocklage, 470 F.3d at 7 n.4; SEC v. Sargent, 229 F.3d 68, 77 (1st Cir. 2000).

In Sargent, we noted that the Second Circuit in dictum appeared dubious that such a benefit need be proven in a misappropriation case.  229 F.3d at 77.  We then dodged the question, in part, by concluding that if a benefit need be proven, the government's evidence that the misappropriator and the tipper were business and social friends with reciprocal interests allowed a jury to find a benefit in the form of the misappropriator's "reconciliation with [a] friend" and the maintenance of "a useful networking contact."  Id.  In Rocklage, we then held that "[e]ven if there is a requirement that the tipper receive a personal

benefit, the mere giving of a gift to a relative or friend is a sufficient personal benefit" to the giver. 470 F.3d at 7 n.4; see also Dirks, 463 U.S. at 664 ("The elements of fiduciary duty and exploitation of nonpublic information also exist when an insider makes a gift of confidential information to a trading relative or friend.").

Although Sargent and Rocklage were civil actions, the question at hand--to what extent is benefit to the misappropriating tipper an element for a Rule 10b-5 violation--would seem to call for the same answer in both a civil and criminal proceeding (unlike questions concerning mens rea). Here, the indictment paints McPhail and Parigian as reasonably good friends. Moreover, the indictment alleges that McPhail requested--and was promised--various tangible luxury items in return for the tips. This would appear to be enough under our precedent.

We do recognize that the Second Circuit itself has recently adopted a more discriminating definition of the benefit to a tipper in a classical insider trading case, rejecting as insufficient the mere existence of a personal relationship "in the absence of proof of a meaningfully close personal relationship that generates an exchange that is objective, consequential, and represents at least a potential gain of a pecuniary or similarly valuable nature." Newman, 773 F.3d at 452. Subsequently, the Ninth Circuit seemed to align itself more closely with our holding

in <u>Rocklage</u>, and the Supreme Court thereafter granted certiorari to review the issue. See <u>United States</u> v. <u>Salman</u>, 792 F.3d 1087, 1094 (9th Cir. 2015) ("Proof that the insider disclosed material nonpublic information with the intent to benefit a trading relative or friend is sufficient to establish the breach of fiduciary duty element of insider trading."), <u>cert. granted in part</u>, 136 S. Ct. 899 (2016).

How this will all play out, we do not venture to say because, as a three-judge panel, we are bound to follow this circuit's currently controlling precedent. We therefore hold that the indictment's allegations of a friendship between McPhail and Parigian plus an expectation that the tippees would treat McPhail to a golf outing and assorted luxury entertainment is enough to allege a benefit if a benefit is required.[8]

D.  **Personal Benefit to Insider**

Parigian further argues that the government was obligated to allege in its indictment that Insider was also

----

[8] Parigian also asserts that there was no relevant benefit here because McPhail never actually <u>received</u> (as opposed to anticipated) the benefit promised him by Parigian and other members of the golfing group. This assertion is a non-starter: anticipation of a personal benefit in return for a breach of duty surely suffices. See <u>Dirks</u>, 463 U.S. at 662 ("[T]he test is whether the insider personally <u>will</u> benefit, directly or indirectly, from his disclosure." (emphasis supplied)). Were actual receipt required, a smart tippee might evade conviction simply by waiting to dole out the promised benefit until enough time had passed to suggest that the coast was likely clear.

expecting a benefit when passing along confidential information to McPhail in the first instance.  But imposing such a requirement in a misappropriation case would defy logic, because the theory only applies when the insider expects that the information will not be misused, and thus will generate no trading benefits to anyone. See O'Hagan, 521 U.S. at 652.

## IV.  Conclusion

Because we see no merit in the only arguments in favor of reversal that Parigian has properly advanced, we affirm the district court's order denying Parigian's motion to dismiss the superseding indictment.