**IN THE**

# United States Court of Appeals

## For the Second Circuit

————

AUGUST TERM, 2024

ARGUED: NOVEMBER 25, 2024
DECIDED: APRIL 30, 2025

No. 24-1726

AMTAX HOLDINGS 227, LLC,

*Plaintiff-Appellant,*

*v.*

COHNREZNICK LLP,

*Defendant-Appellee,*

TENANTS' DEVELOPMENT CORPORATION,

*Intervenor-Defendant.*

————

Appeal from the United States District Court
for the Southern District of New York.

————

Before: LIVINGSTON, *Chief Judge*, CALABRESI and MERRIAM, *Circuit Judges*.

Appeal from an order and judgment of the United States District Court for the Southern District of New York (Buchwald, *J.*) dismissing the Plaintiff-Appellant's complaint for lack of subject matter jurisdiction. Plaintiff-Appellant, AMTAX Holdings 227, LLC ("AMTAX"), sued the Defendant-Appellee, CohnReznick LLP ("CohnReznick") in federal court for breach of fiduciary duty, professional negligence, unjust enrichment, and fraud. AMTAX argues that the district court erred in ruling that the complaint, pleading state-law claims, failed sufficiently to implicate federal interests so as to "aris[e] under federal law." 28 U.S.C. § 1331; *see Gunn v. Minton*, 568 U.S. 251, 258 (2013); *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 316 (2005). We hold that the district court correctly held that it lacked subject matter jurisdiction. Therefore, we AFFIRM.

_____

L. REID SKIBELL, Glenn Agre Bergman & Fuentes, LLP, New York, NY, *for Plaintiff-Appellant*.

MELISSA A. PEÑA (Benjamin D. Schwartz, *on the brief*), Norris McLaughlin, P.A., New York, NY, *for Defendant-Appellee*.

David A. Davenport, BC Davenport, LLC, Minneapolis, MN, *for Intervenor-Defendant.*

_____

CALABRESI, *Circuit Judge*:

This case arises out of a complex dispute involving asserted breaches of state law. These breaches, AMTAX alleges, occurred when CohnReznick calculated a purchase price that excluded exit taxes allegedly contemplated by 26 U.S.C. § 42 ("Section 42") of the Internal Revenue Code. Because the interpretation of the appropriate section of the federal tax code is, ultimately, a matter of federal law, AMTAX claims that federal jurisdiction lies. The district court held that it lacked subject matter jurisdiction. Because we agree that AMTAX's claims do not fall within the narrow category of state-law claims that present significant federal issues, we affirm.

## I. BACKGROUND

### A. The Federal Low-Income Housing Program

AMTAX's claims stem from its participation in a low-income housing enterprise, which sought to take advantage of the federal low-income housing tax credit ("LIHTC"). Congress created the LIHTC program in the Tax Reform Act of 1986. *See* Pub. L. No. 99-514, § 252, 100 Stat. 2085, 2189–208 (1986) (codified at 26

U.S.C. § 42). Broadly speaking, through the LIHTC program, the Internal Revenue Service ("IRS") allocates federal tax credits annually to state housing agencies, which then award the tax credits to developers to offset the costs of constructing affordable housing developments. *See* 8 Scott D. Schimick, *Mertens Law of Fed. Income Tax'n* § 32B:10 (2024). In exchange, the developer agrees to reserve for thirty years some of the units as rent-restricted for low-income households. *See* 26 U.S.C. §§ 42(g)(1), (h)(6)(A)–(D).[1]

To obtain upfront financing to complete housing developments, developers—especially not-for-profit developers who do not need the tax credits—often sell their tax credits to an outside investor. The sale is typically structured using a limited partnership agreement between the developer and the investor. Because the housing serves low-income tenants, the property will frequently not generate a profit, making the receipt of tax credits the real benefit for the investor. When, in due course, the tax credits are no longer available, the investor usually exits the partnership. As a result, there is generally a risk that

---

[1] To qualify for the tax credits, owners of eligible projects must report their compliance with LIHTC leasing requirements to the IRS and a state monitoring agency for the duration of the compliance period. *See* 26 U.S.C. §§ 42(i)(1), (l)(1)–(2). Once an LIHTC project comes into service, the owner may claim the tax credits annually over a ten-year period. *See id.* § 42(f)(1).

LIHTC developments will transition away from operating as affordable housing. For this reason, Congress gives incentives for the purchase of the development after the tax-credit period ends through a right of first refusal ("ROFR"). The ROFR is granted to an eligible stakeholder, often a not-for-profit affiliate of the original developer. *See id.* § 42(i)(7)(A).

Section 42 of the Internal Revenue Code provides a safe harbor that protects investors/limited partners from suffering negative tax consequences when they sell the developments to qualifying not-for-profits.[2] *Id.* §§ 42(i)(7), (h)(5); *Homeowner's Rehab, Inc. v. Related Corp. V SLP, L.P.*, 479 Mass. 741, 753–55 (2018). Section 42 leaves LIHTC partnerships free to structure the contract establishing the partnership, and any eventual sale of the developments, as they see fit. *Homeowner's Rehab*, 479 Mass. at 762; *see generally* 26 U.S.C. § 42. If a LIHTC partnership seeks to take advantage of Section 42's optional safe harbor, however, its contract must have established the terms of the ROFR that is given to the

---

[2] "Investors will face exit taxes on sale if the tax losses they have been allocated exceed their invested capital and if they have used those losses along the way to reduce their taxable income." Jill Khadduri, Carissa Climaco & Kimberly Burnett, U.S. Dep't Hous. and Urb. Dev., *What Happens to Low-Income Housing Tax Credit Properties at Year 15 and Beyond?* 32 (2012).

potential buyer. And, to qualify for the safe harbor, the purchase price cannot be less than the minimum purchase price prescribed by Section 42(i)(7)(B).[3]

**B. AMTAX's Low-Income Housing Partnership**

This case arises from a fairly typical LIHTC arrangement.

In 2003, a limited partnership called Tenants' Development II, LP (the "Partnership"), was formed to redevelop and own 185 affordable housing units located in Boston, Massachusetts (the "Property"). The Partnership was structured as follows: Tenants Development II Corporation (the "General Partner") served as the general partner of the Partnership and owned 0.009% of the Partnership's interests. AMTAX, the plaintiff below and appellant here,

---

[3] The minimum purchase price allowable to qualify for the Section 42 safe harbor is:

> [A]n amount equal to the sum of—
>
> > (i)    the principal amount of outstanding indebtedness secured by the building (other than indebtedness incurred within the 5-year period ending on the date of the sale to the tenants), and
> >
> > (ii)    all Federal, State, and local taxes attributable to such sale.
>
> Except in the case of Federal income taxes, there shall not be taken into account under clause (ii) any additional tax attributable to the application of clause (ii).

26 U.S.C. § 42(i)(7)(B).

became the investor/limited partner. In exchange for a $12 million capital contribution, AMTAX received a 99.99% ownership stake in the Partnership and the right to claim tax credits generated by the Property.

Intervenor-Defendant Tenants' Development Corporation (the "Nonprofit") is a not-for-profit organization affiliated with the General Partner. And Defendant-Appellee CohnReznick has served as the Partnership's auditor and tax preparer for approximately twenty years.

The Partnership and the Nonprofit entered into a right of first refusal and purchase option agreement (the "Agreement") that reflects a typical LIHTC transaction. Under the Agreement, the Partnership granted the Nonprofit a right of first refusal to acquire the Property in the event the Partnership proposed selling its interest, as it was likely to do when the tax credits ended. The method by which the ROFR purchase price was to be calculated was set forth in the Agreement.[4]

---

[4] The purchase price was defined as:

the lesser of:

(x)      the price stated in the Disposition Notice, or

(y)      the sum of the principal amount of outstanding indebtedness secured by the Property (other than indebtedness incurred within the 5-year period ending on the

While the provision did not reference Section 42, it mirrored the statutory language of Section 42's safe harbor provision.

In January 2020, the Partnership engaged CohnReznick to calculate the price at which the Nonprofit could exercise its right of first refusal in accordance with the Agreement. On February 10, 2020, the Partnership informed the Nonprofit of its intention to sell the Property, triggering the Nonprofit's right of first refusal. Attached to the notice was a calculation performed by CohnReznick of the right of first refusal price: $17,108,380. The next day, the Nonprofit notified the Partnership that it planned to purchase the Property for the amount stated in the notice. AMTAX objected to the sale, and specifically to the first refusal price, because it allegedly did not include AMTAX's projected taxes upon the sale.[5]

---

date of any sale to the [Nonprofit]) and all federal, state and local taxes attributable to such sale.

J. App'x at 94.

[5] Closely related cases have been brought in federal court, in the United States Court of Appeals for the First Circuit, and in state court in Massachusetts. Relevant here, AMTAX sued the Nonprofit and the General Partner in the United States District Court for the District of Massachusetts, asserting federal question jurisdiction. AMTAX brought various state-law claims, including claims for breach of contract, breach of fiduciary duties, and fraud. It also sought a declaratory judgment that the Agreement did not comply with Section 42 and that the Agreement was therefore void. *See AMTAX Holdings 227, LLC v. Tenants' Dev. Corp.*, No. 20CV10911 (LTS) (D. Mass. May 12, 2020), ECF No. 1.

## C. **Procedural Background**

In February 2023, AMTAX filed a civil complaint in the Southern District of New York against CohnReznick alleging four state-law claims for breach of fiduciary duty, professional negligence, unjust enrichment, and fraud. AMTAX asserts that CohnReznick entered a "*secret agreement*" with the General Partner to calculate a purchase price that, by excluding exit taxes, failed to comply with

---

The Nonprofit and the General Partner also filed an action against AMTAX in the same district court, asserting diversity jurisdiction and seeking a declaratory judgment that the right of first refusal had been validly triggered. *Tenants' Dev. Corp. v. AMTAX Holdings 227, LLC*, No. 20CV10902 (LTS) (D. Mass. May 12, 2020), ECF No. 1. AMTAX disclosed in a motion to dismiss that one member of its owner, Alden Torch, was a Massachusetts citizen, as were the Nonprofit and the General Partner, thereby destroying diversity jurisdiction. *See* 28 U.S.C. § 1332(a).

The district court dismissed both actions for lack of subject matter jurisdiction. *Tenants' Dev. Corp. v. AMTAX Holdings 227, LLC*, No. 20CV10902 (LTS), 2020 WL 7646934, at *3–4 (D. Mass. Dec. 23, 2020). The United States Court of Appeals for the First Circuit affirmed. *AMTAX Holdings 227, LLC v. Tenants' Dev. II Corp.*, 15 F.4th 551, 559 (1st Cir. 2021).

The Nonprofit and the General Partner subsequently sued AMTAX in Massachusetts state court, seeking a similar declaration. *Tenants' Dev. Corp. v. AMTAX Holdings 227, LLC*, No. 20-1260-BLS1 (Mass. Super. Ct. 2020). The Massachusetts Superior Court in effect ruled in favor of AMTAX, holding, in relevant part, that the Partnership had inappropriately calculated the purchase price. *Tenants' Development Corp. v. AMTAX Holdings 227, LLC*, No. 20-1260-BLS1, 2023 WL 4421400, at *12 (Mass. Super. Ct. June 30, 2023). The Supreme Judicial Court of Massachusetts affirmed, relying solely on the language of the Agreement. *Tenants' Dev. Corp. v. AMTAX Holdings 227, LLC*, 495 Mass. 207, 208 (2025).

Given the parties involved and the claims here asserted, no argument is made that these holdings bind us.

9

Section 42 of the federal tax code as required by the contract among them. CohnReznick moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim. The Nonprofit also filed a motion to intervene and to dismiss. The district court granted CohnReznick's motion and dismissed the suit. *See AMTAX Holdings 227, LLC v. CohnReznick LLP*, 736 F.Supp.3d 169, 185 (S.D.N.Y. 2024).

In reaching this result, the court applied the so-called *Grable-Gunn* test to determine whether the state-law claims fell within federal question jurisdiction. *See Gunn v. Minton*, 568 U.S. 251, 258 (2013) ("[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." (citing *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313–314 (2005))). The district court held that federal jurisdiction was inappropriate because AMTAX's claims did not necessarily raise a substantial federal-law controversy, and because allowing federal jurisdiction over AMTAX's claims would disrupt the federal-state balance. *See AMTAX Holdings 227, LLC*, 736 F.Supp.3d at 182–86. This timely appeal followed.

## II.  DISCUSSION

A case is properly dismissed for lack of subject matter jurisdiction when the district court lacks the statutory or constitutional power to adjudicate it.  *See Makarova* v. *United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."  *Id.*  We review a district court's determination that it lacks subject matter jurisdiction *de novo*.  *See id.*

Title 28 U.S.C. § 1331 vests "original jurisdiction" in federal district courts over "all civil actions arising under the Constitution, laws, or treaties of the United States."  Typically, a case arises under federal law within the meaning of § 1331 when a plaintiff pleads a cause of action created by federal law.  *Gunn*, 568 U.S. at 257.  AMTAX's complaint, however, does not assert any claims created by federal law.  Rather, AMTAX seeks to adjudicate claims for breach of fiduciary duty, professional negligence, fraud, and unjust enrichment created by New York law.

When a plaintiff pleads only state-law causes of action, federal jurisdiction may still exist in a "special and small category" of cases, *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006), namely, those that "implicate significant federal issues," *Grable*, 545 U.S. at 312.  The category is rooted in the

"commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Id.*

"Still, the Supreme Court has been sparing in recognizing state law claims fitting this criterion," *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1019 (2d Cir. 2014), and it is well-settled that "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction," *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 813 (1986). The federal issue must be (1) "necessarily raised," (2) "actually disputed," (3) "substantial," and (4) "capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. Jurisdiction is only proper "[w]here *all four* of these requirements are met." *Id.* (emphasis added).[6]

---

[6] Some prior decisions of this Court have used language suggesting that the *Grable-Gunn* test involves "factors" to be "weigh[ed]," rather than required elements to be met. *Link Motion Inc. v. DLA Piper LLP*, 103 F.4th 905, 917 (2d Cir. 2024); *see also, e.g., NASDAQ OMX Grp., Inc.*, 770 F.3d at 1030; *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank N.A.*, 824 F.3d 308, 315–16; *Tantaros v. Fox News Network, LLC*, 12 F.4th 135, 140–45 (2d Cir. 2021). The Supreme Court

At issue in this case is whether AMTAX's claims fit within the "special and small category" of cases that implicate federal question jurisdiction. AMTAX maintains that its claims related to CohnReznick's alleged failure to calculate properly the Property's purchase price "necessarily depend[] on resolution of a substantial question of federal law." *Empire Healthchoice Assurance*, 547 U.S. at 690 (citation omitted). That is so, it argues, because the correct purchase price "requires an interpretation of Section 42(i)(7) and how the statutory minimum price thereunder should be calculated." Appellant's Br. at 26.

We disagree. Applying *Grable-Gunn* here, we conclude that AMTAX's state-law claims do not arise under federal law. Even assuming *arguendo* that AMTAX's claims necessarily raise disputed questions of federal tax law (*i.e.*, the first and second *Grable-Gunn* requirements),[7] (A) these claims are by their nature unlikely to have the sort of significance for the federal system that is required to establish

has made clear that jurisdiction is proper under *Grable-Gunn only* where "*all four of these requirements* are met." *Gunn*, 568 U.S. at 258 (emphasis added).

[7] We note that the Supreme Judicial Court of Massachusetts declined to look to Section 42 as relevant to determine if exit taxes should have been included in CohnReznick's calculation of the purchase price. *See supra* n.5. Instead, the court based its holding on a pure question of contract interpretation. *See Tenants' Dev. Corp.*, 495 Mass. at 221 ("[O]ur task is to interpret the unambiguous contract language as the parties negotiated it[.]").

federal jurisdiction and (B) exercising federal jurisdiction in the instant case would disturb the accepted balance of state and federal responsibilities.

A.

AMTAX's argument fails first on *Grable-Gunn's* third requirement, that the alleged federal issue in this case be substantial. Substantiality requires that the embedded federal issue be important "to the federal system as a whole," not just the private litigants involved. *Gunn*, 568 U.S. at 260–64. Relevant here, an issue has such importance (1) when a state-law claim would yield an interpretation of federal law that would be "controlling in numerous other cases," *Empire Healthchoice Assurance*, 547 U.S. at 700; *see, e.g.*, *NASDAQ OMX Grp., Inc.*, 770 F.3d at 1024 (finding NASDAQ's failure to operate a fair and orderly market for the Facebook IPO sufficiently significant to the development of a uniform body of federal securities regulation), or (2) when it challenges the "action of any federal department, agency, or service," *Empire Healthchoice Assurance*, 547 U.S. at 700; *see e.g.*, *Grable*, 545 U.S. at 314–15 (holding there was federal jurisdiction in part because the dispute centered on the action of a federal agency, the IRS, and compliance with a federal statute).

By contrast, an issue that is "fact-bound and situation-specific" is not sufficiently substantial to permit federal question jurisdiction. *Empire Healthchoice Assurance*, 547 U.S. at 701; *see also, e.g., Congregation Machna Shalva Zichron Zvi Dovid v. U.S. Dep't of Agric.*, 557 F. App'x 87, 90 (2d Cir. 2014) (summary order) (declining to exercise federal question jurisdiction over a state-law claim because "the determination at issue here is a fact-specific application of the regulations to [the plaintiff] that does not implicate the validity of the regulations themselves").

The law draws this distinction to ensure that there is "a serious federal interest in claiming the advantages thought to be inherent in a federal forum," *Grable*, 545 U.S. at 313, rather than simply a result that affects the particular parties. Upon "careful, case-specific consideration, most federal law questions raised in connection with state law claims will not be deemed substantial." *NASDAQ OMX Grp., Inc*, 770 F.3d at 1029.

That is the case here. True, the Agreement's purchase-price provision uses language that mirrors Section 42. But even if AMTAX can successfully argue that determining whether the provision has been complied with requires an interpretation of Section 42, we cannot say that AMTAX's state-law claims have broader importance "to the federal system as a whole." *Gunn*, 568 U.S. at 264.

15

At their core, AMTAX's claims rest on the interpretation of the Agreement's purchase-price provision, not on federal tax law. Section 42 simply provides a safe harbor to prevent the IRS from denying tax credits to the partnership at issue. Indeed, contracting parties are given the flexibility to structure agreements in these complex relationships as they wish. *See AMTAX Holdings 227, LLC*, 15 F.4th at 558. The parties here took advantage of that flexibility—they negotiated and drafted a unique purchase-price provision, under which CohnReznick was responsible for calculating the purchase price. Whether CohnReznick properly calculated the purchase price pursuant to that provision, therefore, depends on principles of contract interpretation and may be determined by reference to the contracting parties' intent as manifested in the terms of their agreement.

To be sure, in answering this question, a state court might look to federal tax law. Indeed, the fact that the Agreement's purchase-price provision was drafted to mirror the statutory language of Section 42 may evince the parties' intent to comply with the statute. But even if a state court considers Section 42 useful in interpreting the purchase-price provision, its interpretation nevertheless remains specific to the language of the contract before it.

As a result, allowing state courts to resolve the meaning of this contract provision in no way undermines "the development of a uniform body of [tax] law." *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 162 (1989). State courts are expected to "hew closely" to the pertinent federal precedents in interpreting relevant federal tax law. *Gunn*, 568 U.S. at 262. Hence, federal courts looking subsequently at the meaning of Section 42 might well consider the reading given to the Section by a state court addressing this case. But in resolving any such tax questions in the future, the federal courts are not in any way bound by state court rulings. *Cf. Tafflin v. Levitt*, 493 U.S. 455, 465 (1990).

Additionally, AMTAX's claims are unlikely to have significance for the federal system because this dispute does not implicate any action of the federal government. In particular, the IRS is not a party to or otherwise involved in this action. *See Empire Healthchoice Assurance*, 547 U.S. at 700 (holding that federal jurisdiction was lacking because, among other reasons, plaintiffs did not challenge the action of any federal agency).

In short, because the dispute here turns on the Agreement and does not implicate activity by the IRS, AMTAX's claims do not suggest broad significance to the federal government or other parties and, thus, lack substantiality.

B.

The fourth *Grable-Gunn* requirement—that the exercise of federal question jurisdiction over a state-law claim not disturb any congressionally-approved balance of state and federal judicial responsibilities—would also be violated if federal jurisdiction were found in this case. In conducting this analysis, courts principally focus on "the nature of the claim, the traditional forum for such a claim, and the volume of cases that would be affected." *New York ex rel. Jacobson*, 824 F.3d at 316.

Federal jurisdiction in the instant case would disturb the accepted balance of state and federal responsibilities. In *Gunn*, the Supreme Court held that federal question jurisdiction was not triggered for legal malpractice claims relating to patent litigation because the resolution of a "hypothetical patent issue" insufficiently implicated a federal interest, given the state courts' role as the traditional forum for legal malpractice cases. 568 U.S. at 264. Similarly, while "[t]he meaning of [a] federal tax provision is an important issue of federal law that sensibly belongs in a federal court," *Grable*, 545 U.S. at 315, states have "a special responsibility for maintaining standards among members of the licensed professions," *Gunn*, 568 U.S. at 263 (citation omitted). Defendant-Appellee in this

case is an accounting firm.  Garden-variety state-law malpractice or negligence claims against accountants often implicate the interpretation of federal tax law. That does not mean they necessarily trigger federal jurisdiction.

Exercising federal jurisdiction in every case that involves interpreting a federal tax provision analogous to that sought in the instant case would invite countless accountant-malpractice claims in federal court—claims that traditionally fall within the "purview of state regulation of professional conduct." *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 585 U.S. 755, 769 (2018) (quoting *NAACP v. Button*, 371 U.S. 415, 438 (1963)).  Hence, the exercise of federal jurisdiction in this case would disrupt the federal-state judicial balance.

**CONCLUSION**

In sum, this case cannot be squeezed into the slim category *Grable-Gunn* carves out.  Accordingly, the judgment of the district court is AFFIRMED.